912 F.2d 151
 116 Lab.Cas. P 10,259, RICO Bus.Disp.Guide 7550
 Kenneth KRAMER, Plaintiff-Appellant,
v.
BACHAN AEROSPACE CORPORATION, A Michigan corporation;
Michael A. Bachan, and Douglas Bachan,
Individuals; Talon, Inc.; and RMM No.
2, Inc., Defendants-Appellees.
 No. 89-1908.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 10, 1990.
Decided Aug. 24, 1990.
 
 Gary A. Benjamin (argued), Schrauger & Dunn, Detroit, Mich., for Kenneth Kramer.
 Charles S. Rudy, Andrew M. Zack, Sharon M. Woods (argued), Glen W. Johnson, Barris, Sott, Denn & Driker, Detroit, Mich., for Bachan Aerospace Corp., Talon, Inc. and R.M.M., Inc.
 Larry J. Trigger, Katsoulos & Trigger, Rochester, Mich., Dennis J. Dlugokinski, Berkley, Mich., Lyle D. Russell, Jr., Frank & Stefani, Troy, Mich., for Michael and Douglas Bachan.
 Before WELLFORD and BOGGS, Circuit Judges, and DOWD,* District Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiff, Kenneth Kramer, appeals from the district court's grant of defendants' motions for summary judgment to dismiss in this action brought pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), Secs. 1961-1968. The basic issues presented in this case are whether plaintiff lacks standing to assert a claim under RICO and whether plaintiff suffered injuries which are compensable under RICO. Because we find plaintiff lacks standing to sue under RICO, we affirm.
 
 FACTUAL BACKGROUND
 
 2
 Bachan Aerospace Corporation ("BAC") engaged in the manufacture of machine parts for the aerospace industry and others for over twenty years. Prior to its dissolution in 1988, BAC maintained its own work force, manufacturing facilities and contracts. BAC had a collective bargaining agreement with the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") covering its employees. At all times relevant to this lawsuit, Douglas Bachan served as BAC's president and chief operating officer and Michael Bachan served as quality control manager.
 
 
 3
 In 1985, BAC began experiencing financial problems, but BAC's principal lender, Manufacturers National Bank ("the Bank"), believed that with the infusion of new capital, BAC could be a profitable business. The Bank recommended to several individuals with whom it also conducted business that they might acquire BAC. These individuals incorporated RMM No. 2, Inc. ("RMM"), and on December 31, 1985, RMM purchased all of the stock of BAC.[1] BAC continued to suffer losses and in April 1988, BAC conveyed all of its assets to the Bank, its principal secured creditor.
 
 
 4
 Kramer worked for BAC for a short period in 1980, for a few months in 1982, and from June 30, 1985 until his discharge on December 19, 1986. While employed at BAC, plaintiff was a member of UAW Local 417 and was subject to a collective bargaining agreement.
 
 
 5
 On October 8, 1986, BAC disciplined and laid off plaintiff allegedly because of his inability to perform his inspection work satisfactorily. Following the filing of his November 24, 1986 grievance concerning this discharge, plaintiff was reinstated to a lower-category inspection position on a ninety-day probationary status. When recalled, Kramer agreed with BAC that his work performance would be reviewed by BAC officials. On December 19, 1986, BAC terminated plaintiff, and thereafter he filed another grievance pursuant to the collective bargaining agreement. Prior to his dismissal, however, plaintiff contacted the United States Defense Department to inform them that BAC was knowingly manufacturing and shipping defective parts.
 
 
 6
 An arbitrator conducted a hearing on the grievance in July 1987 and, on November 28, 1987, issued an opinion and award finding that BAC did not have just cause to discharge Kramer and awarding plaintiff lost wages for the seven-month period in which he searched for a new job. The arbitrator, however, refused to order reinstatement because the "employer-employee relationship ha[d] been destroyed."[2]
 
 
 7
 On December 16, 1987, BAC was served with a grand jury subpoena for documents relating to its manufacture of gear shafts for the United States government. BAC produced the subpoenaed documents and fully cooperated with the grand jury investigation. Following receipt of the subpoena, BAC conducted an internal investigation with respect to manufacturing and testing of the gear shafts. As a result of that investigation, BAC discharged Douglas Bachan, Michael Bachan, Joseph Noac, the chief quality control inspector, and John O'Leary, a quality control inspector.
 
 
 8
 On May 3, 1988, plaintiff filed an initial complaint against BAC, Douglas Bachan and Michael Bachan asserting: (1) a civil right of action under RICO; (2) violations of Michigan state law; (3) violation of Michigan's Whistleblowers' Protection Act; and (4) defendant BAC's failure to comply with the arbitrator's award. On September 30, 1988, plaintiff filed an amended complaint adding RMM and Talon as defendants. Because both the complaint and the amended complaint contained vague and ambiguous allegations, the district court directed plaintiff on October 28, 1988, to file a RICO "Case Statement" within twenty days. Plaintiff initially failed to comply, but later filed the required statement on February 2, 1989, after a delay of three months. On February 7, 1989, the district court dismissed plaintiff's claims for damages under Michigan law and for enforcement of the arbitrator's award.[3]
 
 
 9
 After reviewing the plaintiff's RICO "Case Statement", defendants BAC, RMM, and Talon filed a motion to dismiss for failure to state a claim upon which relief can be granted and a motion for summary judgment. Defendants Michael and Douglas Bachan followed these filings with a motion to dismiss on similar grounds.
 
 
 10
 The district court held a hearing on defendants' motions after which it granted defendants' motions for summary judgment and dismissed plaintiff's complaint. Judge Cohn ruled that the defendants had established: (1) that plaintiff lacked standing under RICO; (2) that plaintiff failed to plead fraud with specificity; (3) that plaintiff had not alleged an adequate pattern of racketeering activity; (4) that the corporate defendants could not be vicariously liable under RICO; (5) that plaintiff had not alleged sufficient involvement for Talon; and (6) that plaintiff could not collect damages for physical and mental injuries under RICO.[4] Plaintiff appeals from this order granting defendants' motions for summary judgment and dismissing the case.
 
 STANDARD OF REVIEW
 
 11
 All defendants' motions in this case may be treated as motions for summary judgment.[5] A grant of summary judgment should be sustained if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). The moving party satisfies this burden by " 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the party opposing the motion "must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986) (the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). Taking the record as a whole and viewing the facts in a light most favorable to the party opposing the motion, summary judgment is appropriate where the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 STANDING TO ASSERT A CLAIM UNDER RICO
 
 12
 Plaintiff argues that he is a discharged whistle blower who has standing to sue under RICO. The district court, however, found that plaintiff could not sue under RICO to recover for the loss of his job because his discharge was an incidental consequence of defendant BAC's RICO violations. This decision is supported by other courts that have considered the question.
 
 
 13
 As part of RICO's extensive civil enforcement scheme, Congress included 18 U.S.C. Sec. 1964(c) which allows for private suits for treble damages and attorneys' fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter...."[6] 18 U.S.C. Sec. 1964(c) (emphasis added). In Sedima v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court explained the requirements for standing under Sec. 1964(c):
 
 
 14
 If the defendant engages in a pattern of racketeering activity in a manner forbidden by [Sec. 1962], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under Sec. 1964(c)....
 
 
 15
 ... [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.... "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."
 
 
 16
 Id. at 495-97, 105 S.Ct. at 3284-85 (citation omitted) (emphasis added). The Court concluded that "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern ... Any recoverable damages occurring by reason of a violation of Sec. 1962(c) will flow from the commission of the predicate acts." Id. at 497, 105 S.Ct. at 3285 (emphasis added) (footnote omitted). It follows, therefore, if a plaintiff fails to demonstrate that a causal nexus exists between his injury and the predicate acts (the criminal RICO violations), he has no standing to sue under Sec. 1964(c). See Cullom v. Hibernia Nat. Bank, 859 F.2d 1211, 1215 n. 9 (5th Cir.1988); see also Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24-25 (2d Cir.1990) (holding that standing may be founded only upon injury from overt acts that are also predicate acts under Sec. 1961, and not upon all overt acts in furtherance of a RICO conspiracy); Burdick v. American Express Co., 865 F.2d 527, 529 (2d Cir.1989) (holding that in order to establish standing, plaintiff must show that damage to his business or property resulted from predicate acts constituting the RICO violation); Pujol v. Shearson/American Express, Inc., 829 F.2d 1201, 1205 (1st Cir.1987) (two requirements for standing under Sec. 1964(c): (1) a violation of Sec. 1962; and (2) violation caused injury); Nodine v. Textron, Inc., 819 F.2d 347, 349 (1st Cir.1987) ("The Rico Act provides no cause of action to individuals injured by acts other than criminal RICO violations."); Morast v. Lance, 807 F.2d 926, 933 (11th Cir.1987) (holding that injury must flow directly from predicate acts); Warren v. Manufacturers Nat. Bank of Detroit, 759 F.2d 542, 545 (6th Cir.1985) (holding that injury must be directly caused by the asserted RICO violations).
 
 
 17
 In Warren, we considered the right of a plaintiff to bring suit under RICO for loss of employment where the corporation for which he was chairman of the board was forced into bankruptcy by the fraudulent acts of the defendant bank. 759 F.2d at 544-45. Holding that the plaintiff lacked standing under RICO, we stressed that the alleged acts of fraud were not directed toward the plaintiff as an employee, but rather toward the corporate entity. We concluded that "though plaintiff's loss of employment might be characterized in one sense to be a consequence of defendant's conduct, it hardly can be said to have been directly 'caused' by the asserted conduct." Id. at 545. We require that plaintiff in a case of this type demonstrate that his discharge was not merely incidental to, but directly caused by a defendant's alleged RICO violations. Accord Grantham and Mann, Inc. v. American Safety Prods., Inc., 831 F.2d 596, 606 (6th Cir.1987); Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir.1984).
 
 
 18
 Plaintiff, despite this overwhelming authority, asks that we establish a special exception for whistleblowers, arguing that BAC could not have continued its scheme to defraud the government if any of the employees had informed government officials of the racketeering activity. While it has some undoubted appeal, plaintiff's argument has been rejected by virtually every court which has addressed this issue. See Hecht, 897 F.2d at 24-25 (former sales representative of Commerce Clearing House denied standing to sue where he was terminated for refusing to cooperate in concealment of fraudulent subscription scheme); Norman v. Niagara Mohawk Power Corp., 873 F.2d 634, 637 (2d Cir.1989) (former quality assurance auditors at nuclear plant denied standing under RICO where they were harassed in retaliation for the diligent conduct of inspection duties); Burdick, 865 F.2d at 529-30 (former vice-president of American Express denied standing to sue where he was fired in retaliation for his complaints about parent Shearson's alleged illegal activities); Cullom, 859 F.2d at 1218 (former president and CEO of bank denied standing where he was forced to resign for refusing to participate in fraudulent scheme); Pujol, 829 F.2d at 1206 (former president of Shearson Puerto Rico denied standing where he was fired and slandered for reporting and stopping the illegal schemes); Nodine, 819 F.2d at 349 (former employee of Textron denied standing to sue where he was fired for reporting illegal customs scheme to his superiors); Morast, 807 F.2d at 933 (former bank employee denied standing where he was fired for reporting illegal bank transactions).
 
 
 19
 The only exceptions to this impressive volume of authority seem to be: (1) Williams v. Hall, 683 F.Supp. 639, 642 (E.D.Ky.1988) (discharged Ashland Oil employees permitted to sue under civil RICO conspiracy statute where they alleged that part of the conspiracy was to cover up illegalities by terminating employees refusing to participate in the schemes); and (2) Callan v. State Chemical Mfg. Co., 584 F.Supp. 619, 622 (E.D.Penn.1984) (former sales representatives of chemical company permitted to sue under RICO where they alleged that they were dismissed for refusing to participate in an alleged racketeering scheme).[7] Moreover, the Fifth Circuit, in Cullom, has held specifically that, "[w]histle blowers do not have standing to sue under RICO for injury caused by the loss of their job." 859 F.2d at 1215 (citing Pujol, 829 F.2d 1201, Nodine, 819 F.2d 347, and Morast, 807 F.2d 926). The strong weight of authority, therefore, supports the district court's holding that plaintiff does not have standing to sue under RICO.
 
 
 20
 Relying upon dicta in Nodine, plaintiff claims that his allegations of obstruction of justice satisfy the necessary causation requirement. Nodine noted that allegations of obstruction of justice might satisfy Sedima 's standing requirement in certain cases involving dismissals of employees for reporting violations. 819 F.2d at 349 n. 3; see also Pujol, 829 F.2d at 1205. In his amended complaint and RICO Case Statement, plaintiff alleges that by discharging him defendants corruptly influenced, obstructed or impeded the due administration of justice in violation of 18 U.S.C. Sec. 1503. We have held, however, that a violation of 18 U.S.C. Sec. 1503 requires proof that an individual has " 'corruptly' endeavor[ed] to interfere with the due administration of justice ... with the general intent of knowledge as well as the specific intent or purpose to obstruct." United States v. Jeter, 775 F.2d 670, 679 (6th Cir.1985) (emphasis in original), cert. denied, 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986). Plaintiff has not demonstrated defendants' specific intent to obstruct the administration of justice, and defendants apparently did nothing to prevent plaintiff from reporting the alleged scheme to the government. Plaintiff's discharge in no way impeded the government's investigation of defendants' alleged RICO violations.
 
 
 21
 Plaintiff unfortunately has not demonstrated that his discharge was a direct result of defendants' alleged RICO violations. The government, not plaintiff, was the target of defendants' scheme to ship defective military hardware. Like the plaintiffs in Morast, Nodine, Pujol and Cullom, plaintiff's injury resulted from defendants' decision to fire him in retaliation because he reported an allegedly fraudulent scheme to his superiors and to government officials. While such retaliatory actions by employers are certainly not to be encouraged, as evidenced by the arbitrator's award in this case, we cannot hold in light of prior authority in this and other circuits that Kramer has standing to seek treble damages and attorneys' fees for wrongful discharge under RICO.
 
 
 22
 For the reasons stated above, we AFFIRM the district court's grant of defendants' motions for summary judgment.
 
 
 
 *
 The Honorable David D. Dowd, Jr., Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The individuals who purchased BAC through the corporation RMM have shareholdings in other companies, including Talon, Inc. ("Talon"). BAC was neither the parent nor the subsidiary of Talon and had no other corporate relationship with Talon, except that the two had certain common shareholders. Neither Douglas nor Michael Bachan ever served as an officer, director, shareholder, or employee of either RMM or Talon
 
 
 [2]
 Plaintiff never filed an unfair labor practice complaint with the National Labor Relations Board during or after his employment with BAC
 
 
 [3]
 Plaintiff does not appeal the district court's dismissal of these claims contained in Counts II, III and IV of his amended complaint
 
 
 [4]
 Because the discovery period had not ended, the district court had deferred ruling on whether plaintiff had pleaded fraud with specificity
 
 
 [5]
 In addition to filing motions for summary judgment pursuant to Fed.R.Civ.P. 56, defendants filed motions for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6)
 
 
 [6]
 18 U.S.C. Sec. 1963 defines the underlying criminal violation that is necessary for civil recovery under Sec. 1964(c). Section 1962(c) provides:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 18 U.S.C. Sec. 1962(c).
 
 
 [7]
 Plaintiff in this case does not allege that he was fired for refusing to participate in the scheme to defraud the government. He claims, instead, that he was fired for reporting the scheme to corporate superiors and government authorities