**Terry Keith LAWSON, Plaintiff,**

v.

**Rum Robert BOUCK, et al., Defendants.**

**No. 1:90CV339.**

United States District Court, W.D. Michigan, S.D.

Sept. 24, 1990.

Terry Keith Lawson, pro se.

Frank J. Kelly, Atty. Gen., and Deborah K. Isom, Asst. Atty. Gen., for defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is presently incarcerated at the Ionia Maximum Correctional Facility (IMCF). Defendants are a resident unit manager (Bouck), an assistant resident unit manager (Bearss), and an assistant deputy warden (Tyszkiewicz) at IMCF. In its entirety, plaintiff's *pro se* complaint alleges:

On March 15th 1990, all of my personal legal material, stamps, legal envelopes, legal pads and carbon paper was confiscated by correctional officer Ronald Pline #159, at approximately 1:44 pm. On March 16th 1990, assistant resident unit manager, G. Bearss, sent me an notice of intent to conduct an administrative hearing in which it was conducted by resident unit manager, Robert Bouck on March 27th 1990. I was not allowed to attend the hearing in which 80 stamps, 97 legal envelopes, 18 sheets of carbon paper were taken and return to the mailroom

and prisoner services, Z. Tyszkiewicz, of programs. As an result of this act I have been deprived of life, liberty, or property as well as access to the courts, violating various constitutional protected rights.

Plaintiff has sued defendants in "their individual and official capacities" seeking compensatory and punitive damages.

Defendants have moved for summary judgment, Fed.R.Civ.P. 56, supporting the motion with affidavits and other attachments. The only argument made by defendants justifying summary judgment in their favor is Eleventh Amendment immunity (docket #7). Three months have passed since the filing of defendants' motion. Despite being apprised of the opportunity to do so, plaintiff has not filed any response to defendants' motion. As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–81 (6th Cir.1989). While preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial. Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153 (6th Cir.1990). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

■ The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct.

1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party satisfies his burden of showing that there is an absence of evidence to support the nonmoving party's case, the party opposing the motion "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Kramer*, 912 F.2d at 153 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). To sustain this burden, the nonmoving party may not rest on the mere allegations of the pleadings. Fed.R.Civ.P. 56(e); *Lujan v. Nat'l Wildlife Federation*, — U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). A party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *Booker*, 879 F.2d at 1310; *see Street v. J.C. Bradford & Co.*, 886 F.2d at 1478–81. Where no such showing is made, the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case and on which that party will bear the burden of proof at trial. *See Lujan*, 110 S.Ct. at 3186; *Kramer*, 912 F.2d at 153–54. Applying these standards, the court concludes that defendants are entitled to judgment as a matter of law.

### DISCUSSION

■ The only defense raised by defendants' motion for summary judgment is Eleventh Amendment immunity. The Eleventh Amendment provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI. Although the amendment by its terms prohibits only suits against a state by citizens of another state or by aliens, the Supreme Court has held that the amendment's fundamental principles of sovereign immunity negate federal exercise of jurisdiction over suits by citizens against their own states as well. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct.

504, 33 L.Ed. 842 (1890); *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). The Eleventh Amendment bars any suit, absent consent, against the state itself regardless of the form of relief requested. *Pennhurst*, 465 U.S. at 100–01, 104 S.Ct. at 907–08.

In addition to barring all federal-court suits against the states, the Eleventh Amendment bars damage suits against state officers in their *official* capacities. *See Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). In contrast, suits against state actors in their *personal* capacities are not barred. The labels "official capacity" and "personal capacity" are terms of art, and their definitions cause confusion to both litigants and the courts. The Supreme Court attempted to dispel this confusion in *Kentucky v. Graham*, when it set forth the following definitions:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a

" 'moving force' " behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

*Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985) (citations omitted).

■ Defendants in the present case contend that this is an official-capacity suit and that the Eleventh Amendment bar applies. In support of their position, defendants rely upon two recent decisions of the Sixth Circuit: *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936 (6th Cir.1990), and *Rice v. Ohio Dept. of Transportation,* 887 F.2d 716 (6th Cir. 1989), *vacated on other grounds,* — U.S. —, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990). Upon careful review of *Cowan* and *Rice,* the court concludes that they are controlling and that they require dismissal of this damage action on Eleventh Amendment grounds.

*Rice* was a civil rights action brought by a state employee for allegedly unconstitutional promotion practices. Among the defendants were the director and deputy director of the department of transportation, sued "both in their official and personal capacities." 887 F.2d at 719. Despite this allegation, the court determined that the suit was an official-capacity action only. The court stated: "The capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued." *Id.* Because the record did not suggest in any way that the

defendants' actions "were somehow unofficial," they were entitled to immunity.

In *Cowan,* the Sixth Circuit amplified the *Rice* rule. *Cowan* was a civil rights suit against a state medical school and two of its deans arising from plaintiff's expulsion from school. The court held that all claims against the school itself were barred by the Eleventh Amendment. 900 F.2d at 941. The claim against the deans was that they vindictively engineered plaintiff's dismissal from medical school because of a personal vendetta, in violation of the Due Process Clause. The court saw no indication that these defendants "were acting in anything other than in their official capacities." *Id.* at 942. On this basis, the court affirmed dismissal on Eleventh Amendment grounds, as it construed the actions against the deans as an official-capacity suit. *Id.* at 942–43.

The present case is undistinguishable from *Rice* and *Cowan.* Here, plaintiff seeks to hold three state officials responsible for confiscation of personal property, apparently on due-process grounds. The challenged actions were performed by defendants in the routine course of their duties as prison officials. Officer Pline removed the items from plaintiff's cell and completed a contraband removal record. Defendant Bouck, a resident unit manager, conducted an administrative hearing pursuant to departmental rules to determine the propriety of plaintiff's possession of the materials. Defendant Tyszkiewicz, an assistant deputy warden, provided factual information to Bouck for purposes of the hearing and ordered the return to prison stores of such materials as were found at the hearing to be inappropriately in plaintiff's possession. As this court reads *Rice* and *Cowan,* the Sixth Circuit considers an official-capacity suit to be one in which state officers are sued for conduct performed in their role as state officers: "The capacity in which the individual defendants were in fact acting is what matters." *Rice,* 887 F.2d at 719. Here, the record clearly demonstrates that all defendants were acting as prison officials when they performed the challenged acts. Accordingly, on the authority of *Rice* and *Cowan,* this action

must be deemed an official capacity action subject to dismissal on Eleventh Amendment grounds.

*Rice* and *Cowan* appear to represent a departure from preexisting Supreme Court authority. It can be argued that *Rice* and *Cowan* apply a definition of "official capacity" inconsistent with that adopted in *Kentucky v. Graham,* as quoted above. Under *Kentucky v. Graham,* the relevant test is not the capacity in which the defendant was acting. In both personal and official capacity actions, liability is predicated upon conduct by government officials acting under color of state law. 473 U.S. at 165, 105 S.Ct. at 3104. The "official capacity" label is limited to those lawsuits which seek relief directly from the state, such as an award of damages from the public treasury, even though a state official and not the state is the named defendant. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Accordingly, the determination of official versus personal capacity status has traditionally been made on the basis of the target of the relief requested, *not* on the basis of the capacity in which defendants were acting. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (Eleventh Amendment extends to suits "seeking to impose a liability which must be paid from public funds."); *Ford Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) ("And when the action is in essence one for recovery of money against the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."); *accord, Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (immunity only applies if relief sought from public treasury or against the state).

The Sixth Circuit, however, apparently has concluded that the Supreme Court fundamentally changed the law on official-capacity actions in *Will v. Michigan Dept. of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Both *Rice* and *Cowan* rely upon *Will* for the proposition that official capacity status is governed by the nature of the defendant's action and not by the target of the relief requested. *Will* did not directly involve Eleventh Amendment immunity, as the case arose in the state courts, where the Eleventh Amendment does not apply. Rather, the issue in *Will* was one of statutory construction: are state officers acting in their official capacity "persons" within the meaning of 42 U.S.C. § 1983? 109 S.Ct. at 2305. In answering this question in the negative, the Court relied heavily on analogous Eleventh Amendment principles. *Id.* at 2309–11. In *Will,* the Court did refer several times to officers "acting" in their official capacities, and not merely "sued" in that capacity. The Sixth Circuit in *Rice* and *Cowan* has apparently concluded that the Supreme Court's use of language was purposeful and was meant to shift the relevant test away from the target of the relief and toward the nature of the defendant's action.

If the question were one of first impression, this court might not conclude that *Will* intended such a drastic change in the law *sub silento. See Kolb v. Ohio,* 721 F.Supp. 885, 895–98 (N.D.Ohio 1989) (*Will* did not intend to shift focus to nature of defendant's action). The Sixth Circuit's *Rice* and *Cowan* decisions, however, take the opposite view. This court cannot assume that the Court of Appeals reached this conclusion lightly, especially in light of Judge Wellford's concurrence in *Cowan,* which expressly takes issue with the majority's reading of *Will.* 900 F.2d at 943. This court is bound to apply the latest pronouncements of the Sixth Circuit, regardless of this court's own views.

Plaintiff has sued three defendants for acts done in their positions as state officers. Plaintiff seeks only damages against the officers as relief. Under traditional analysis, this would be considered a personal-capacity suit. *Rice* and *Cowan,* however, hold that such suits are official-capacity actions, barred by the Eleventh Amendment. Defendants' motion for summary judgment will therefore be granted.