**Daren ECKFORD–EL, Plaintiff,**

v.

**Raymond TOOMBS, et al., Defendants.**

**No. 1:90cv 794.**

United States District Court,
W.D. Michigan, S.D.

March 27, 1991.

Daren Eckford–El, pro se.

Deborah K. Isom, Asst. Atty. Gen., for defendants.

## OPINION

HILLMAN, Senior District Judge.

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is presently incarcerated at the Ionia Maximum Correctional Facility (IMCF). Defendants are six officials of IMCF. Plaintiff's *pro se* complaint alleges that his First Amendment rights were violated when defendants rejected written materials sent to plaintiff by another inmate. Defendants rejected the materials as being in violation of policy directive PD–BCF–63.-03, which prohibits inmates from entering into certain contractual arrangements. Plaintiff seeks monetary and injunctive relief.

Defendants have moved for summary judgment, Fed.R.Civ.P. 56, supporting the motion with their affidavits. Plaintiff has filed a response in opposition to defendants' motion. As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–81 (6th Cir.1989). While preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial. Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (6th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judg-

ment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12).

The moving party bears the burden of clearly and convincingly demonstrating the absence of any genuine issues of material fact. *Sims,* at 526. The court must consider all pleadings, depositions, affidavits, and admissions on file and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the moving party carries his burden, the nonmoving party must present significant probative evidence showing that genuine, material factual disputes remain to defeat summary judgment. *Sims,* at 526. The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* at 526. Applying these standards, the court determines that defendants' motion will be granted in part, but that judgment will be entered for plaintiff on one aspect of his claim.

### Facts

The following facts are undisputed. On February 12, 1990, plaintiff, an inmate at IMCF, received an envelope of material from Morris Martin, an inmate at another institution. The material was entitled "How To Prepare For Your Paralegal Career" and described in detail the opportunities and advantages of a particular correspondence school. The brochure, a copy of which is attached to the Martin affidavit (docket # 13), is published by the School of Paralegal Studies and appears directed to the general public. The brochure was merely passed on to plaintiff by Martin after Martin had received it in the mail himself.

The brochure submitted to the court does not contain any application form or other proposed form of contract. Both plaintiff and Martin aver that the material sent to plaintiff did not contain any contractual or application forms for the correspondence school, but only information about the school. Defendants have not disputed this point. However, when the material arrived at IMCF on February 12, 1990, defendant Letts rejected the material on the grounds that "contractual agreements are not allowed per PD–BCF–63.03" (Letter Rejection, docket # 10). After an administrative hearing, defendant Kinney determined that the materials had to be rejected because plaintiff "cannot make contractual agreements per PD–BCF–63.03." For disposition, plaintiff opted to have the materials returned to Martin (Hearing Report, docket # 10). This lawsuit followed.

### Discussion

#### I.

Defendants have raised the defense of Eleventh Amendment immunity. The Eleventh Amendment bars damage suits against state officers in their official capacities. *See Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). Recently, this court issued an opinion recognizing the Sixth Circuit decisions holding that suits that challenge an action taken by an individual in his capacity as a state official constitute "official capacity" suits. *Lawson v. Bouck,* 747 F.Supp. 376 (W.D.Mich.1990). As in *Lawson,* plaintiff in the instant case seeks to hold defendants responsible for the actions taken while they were working as employees of IMCF. Despite the fact that plaintiff claims to be suing defendants in their individual capacities, controlling Sixth Circuit decisions require that this case be deemed an official-capacity action. *See Cowan v. University of Louisville School of Medicine,* 900 F.2d 936, 942 (6th Cir.1990) (quoting *Rice v. Ohio Dept. of Transportation,* 887 F.2d 716 (6th Cir.1989), *vacated on other grounds,* —— U.S. ——, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990) ("The record does not suggest in any way that the defendant's actions were somehow unofficial. The capacity in which the individual defendants were in fact acting is what matters, not the

capacity in which they were sued....")). Accordingly, plaintiff's claim for monetary damages is subject to dismissal on Eleventh Amendment grounds, without prejudice to maintenance of an action in the state courts.

■ The same cannot be said for plaintiff's claim for injunctive relief. In an injunctive or declaratory action grounded on federal law, the state's immunity can be overcome by naming state officials as defendants. *Kentucky v. Graham,* 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985); *see Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). An action against a state official sued in his official capacity for injunctive relief is not treated as an action against the state. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). Therefore, while the Eleventh Amendment bars plaintiff's claim for monetary relief, it does not prevent plaintiff from maintaining a claim for injunctive relief in this official-capacity action. *Will,* 109 S.Ct. at 2311 n. 10.

Accordingly, defendants' motion for summary judgment will be granted to the extent that it seeks dismissal of plaintiff's damage claims. For the reasons outlined below, though, defendants' motion will be denied as to plaintiff's claim for injunctive relief.

## II.

■ Rights secured by the First Amendment are fundamental, and convicted prisoners retain all First Amendment rights not incompatible with their status as prisoners. *See Burton v. Nault,* 902 F.2d 4 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 198, 112 L.Ed.2d 160 (1990). The Supreme Court has recently noted that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989). However, even fundamental constitutional rights must be exer-

cised with due regard for the inordinately difficult undertaking of running a modern prison. Consequently, the Supreme Court holds that prison regulations affecting a prisoner's First Amendment rights must be analyzed under the familiar *Turner* analysis; namely, such regulations are valid if they are reasonably related to legitimate penological interests. *Thornburgh,* 490 U.S. at 413, 109 S.Ct. at 1881 (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)); *see Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 1037, 108 L.Ed.2d 178 (1990).

■ The brochure mailed to plaintiff is presumptively within the First Amendment's protection. The freedoms guaranteed by the First Amendment extend to a prisoner's incoming mail. *Thornburgh,* 490 U.S. at 407, 109 S.Ct. at 1878; *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir. 1985). The particular brochure at issue here is not pornographic or obscene, does not contain escape plans, incitement to violence, or any other matter obviously inimical to prison order or safety. State interference with the brochure outside the prison walls would be virtually unthinkable under First Amendment doctrine. The question before the court is whether, because of plaintiff's status as a prisoner, his First Amendment right to receive the brochure must yield to a countervailing, legitimate penological interest. The court answers this question in the negative.

■ Defendants' motion and brief make a half-hearted attempt to assert a legitimate penological justification for depriving plaintiff of this clearly innocuous brochure. Defendants say, first of all, that correspondence between prisoners is limited to those prisoners who have entered into a valid legal assistance agreement. This is plainly incorrect. Michigan Administrative Rule R791.6603 regulates receipt of mail by prisoners and generally allows prisoners to receive unlimited amounts of first-class mail, except for certain classes of items deemed "a threat to the order and security of the institution or the prisoner's rehabilitation." Policy Directive PD–BCF–63.03 contains a list of the categories of banned materials

which are considered to be a threat to order, security, or rehabilitation. The policy does not prohibit inmate-to-inmate correspondence *per se*. The only restriction imposed upon inmate-to-inmate correspondence is that the incoming mail may be read by prison officials prior to delivery (PD–BCF–63.03, at 3; docket # 10). More important, this justification comes after the fact. The notice of rejection does not invoke some sort of blanket prohibition against inmate-to-inmate correspondence, assuming such a prohibition exists. Rather, the only justification for the rejection was that the brochure violated the prohibition against contractual arrangements (*see* Kinney Aff., Ex. 1).

Second, defendants suggest that communications between prisoners can offer the opportunity for planned disruptions and assaults on guards (Brief at 12; docket # 10). This possibility provides a legitimate justification for the provision in PD–BCF–63.03 allowing officials to read all prisoner-to-prisoner correspondence. It does not offer any justification for rejecting the educational brochure at issue here, which, after review by prison officials, would obviously present no conceivable threat of disruption or assault.

■ Defendants' principal justification for rejection is that the brochure was contraband under the policy directive banning book-of-the-month clubs, record clubs, tape clubs, or similar contract purchases (PD–BCF–63.03, at 4). This was the only ground asserted at the time of the rejection. The brochure was rejected on the ground that "contractual agreements are not allowed per PD–BCF–63.03" (see Notice of Rejection, Notice of Hearing, and Hearing Report; docket # 10). This ground for rejection does not withstand analysis.

First, it is clear that there was nothing "contractual" about this material that would place it within the ambit of PD–BCF–63.03. The evidence of record reveals that Martin sent plaintiff twenty-five informational pages about a correspondence course entitled "How To Prepare For Your Paralegal Career" sponsored by The School of Paralegal Studies and the Professional Career Development Institute. There is no evidence that Martin was soliciting plaintiff's enrollment, nor is there any evidence that anyone solicited plaintiff's enrollment. Both plaintiff and Martin indicate that no accompanying application to join this correspondence school was contained within the twenty-five pages of information. It is impossible for the court to discern how receipt of a school brochure could in any way violate the prohibition against inmates' entering into certain contracts.

PD–BCF–63.03 does not prohibit all contractual relationships, but only those contract purchases similar to book, record and tape clubs operating on a credit basis. *See Gardner v. Dalmonte*, No. M87–211 (W.D. Mich. Jan. 30, 1991) (report and recommendation) (prohibition of credit purchases by PD–BCF–63.03 justified as safeguard against inmate abuse of credit). In contrast, departmental regulations clearly allow inmates to engage in other contractual arrangements, such as contracts to marry, to perform prison work, to purchase prepaid books from approved vendors, and even to provide legal assistance to one another. Prison officials are justified in forbidding inmates from entering into certain kinds of credit arrangements. *See Rodriguez v. James*, 823 F.2d 8, 12 (2nd Cir. 1987). Defendants have not even attempted to justify a ban against inmate receipt of educational brochures. Accordingly, the application of the policy directive's prohibition—which is aimed at preventing fraud and abuse of credit transactions—to the mere *receipt* of an educational brochure is a farfetched interpretation of the rule and is wholly arbitrary.

■ In making their argument, defendants ignore the only constitutional issue presented by this case. The issue is not whether the prison has a regulation that arguably prohibits receipt of protected material. The issue is whether the prison's action in excluding protected material pursuant to that regulation is reasonably related to legitimate penological goals. *See Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. Defendants have not even attempted to

explain how any valid penological interest is furthered by a policy precluding inmates from receiving educational brochures, if such a policy even exists. It is clear to the court that the brochure does not run afoul of any departmental policy, that the exclusion of the brochure was a mistaken application of an inapplicable policy, and that defendants' attorneys are unable to point to any legitimate penological purpose reasonably advanced by depriving inmates of information concerning future educational opportunities.

In general, the *Turner* analysis requires the court to engage in a four-part inquiry, which includes the existence of ready alternatives, the impact of the regulation on guards, and other factors. *See Kent v. Johnson*, 821 F.2d 1220, 1230 (6th Cir. 1987). In the present case, however, defendants have failed to articulate any legitimate, content-neutral interest rationally furthered by their action in excluding the brochure. In the absence of any arguable justification for the rejection, further analysis of the *Turner* standards is unnecessary.

By moving for summary judgment, defendants invited an examination of the claim and defense and empowered the court to enter judgment against them, even without a cross-motion by plaintiff. If one "party moves for a summary judgment, and the court finds that the moving party is not entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made." 6 J. Moore, W. Taggart & J. Walker, Moore's Federal Practice ¶ 56–12, at 56–161 (2d ed. 1988); *see Pueblo of Santa Ana v. Mountain States Tel. & Tel. Co.*, 734 F.2d 1402, 1408 (10th Cir.1984), *rev'd on other grounds*, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) (where no genuine issue of fact exists, a court may enter summary judgment for either party, whether or not such party made a motion for summary judgment); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982); *Farmers Ins. Exch. v. Allstate Ins. Co.*, 143 F.Supp. 213, 215 (E.D.Mich.1956). Accordingly, as defendants invoked the power

of the court to render summary judgment against plaintiff, it is reasonable for the court to render summary judgment for plaintiff, as the undisputed facts clearly warrant that result. No possible penological justification exists for confiscating an educational brochure under the pretext that its mere receipt constitutes a forbidden contractual relationship. Summary judgment on the injunction claim will therefore enter against defendants Letts and Kinney, who were personally responsible for rejecting the materials without justification.

### III.

In contrast, summary judgment is appropriate for defendants Toombs, Williams, Thompson, and Hartman. To establish liability under section 1983 against an individual defendant, plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *see Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) ("At a minimum, a 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct."). Liability under section 1983 may not be imposed vicariously. *Hays v. Jefferson County*, 668 F.2d at 873.

Plaintiff's complaint does not allege that defendants Toombs, Williams, Thompson, or Hartman participated in, authorized, or approved the rejection of the materials in question. The allegations of plaintiff's complaint are insufficient to establish that defendants Toombs, Williams, Thompson, or Hartman were personally involved in the allegedly wrongful activity, even under the liberal review accorded to *pro se* actions. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir.1974) (*pro se* complaint merely naming defendant in caption, without allegation of specific conduct dismissed). The only mention of defendants Williams's and Hartman's names is in the caption of plain-

tiff's complaint. Defendant Thompson only delivered to plaintiff the notice of the rejection hearing. The body of the complaint does not contain any indication that these defendants played any part in the decision to reject the materials. Defendant Toombs is the warden at IMCF. The mere fact that Toombs is in a supervisory position at IMCF does not justify the imposition of liability upon him under section 1983. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

For all of these reasons, plaintiff has failed to demonstrate that defendants Toombs, Williams, Thompson, and Hartman were personally involved in the rejection of plaintiff's materials. Accordingly, these defendants are entitled to judgment as a matter of law.

### IV.

Defendants' motion for summary judgment will be granted as to all claims against defendants Toombs, Williams, Thompson, and Hartman and all damage claims against any defendant. Summary judgment is granted in favor of plaintiff on the merits of plaintiff's injunction claim against defendants Letts and Kinney. Those defendants will be enjoined from rejecting incoming first-class mail to plaintiff which has to do with correspondence schools, unless the mail is otherwise excludible under a specific departmental policy. Plaintiff's ability to enroll in these schools is another matter entirely, and the court expresses no opinion whatsoever on plaintiff's ability to participate in these courses. Additionally, defendants are ordered to provide plaintiff with the correspondence school materials which were the basis of this lawsuit. Plaintiff may submit a bill of costs incurred in maintaining this lawsuit.

### JUDGMENT

In accordance with the opinion filed this date:

IT IS ORDERED that all claims against defendants for monetary relief be and hereby are DISMISSED on Eleventh Amendment grounds, without prejudice to maintenance of an action in the state courts.

IT IS FURTHER ORDERED that all claims against defendants Toombs, Williams, Thompson, and Hartman are dismissed with prejudice for lack of personal involvement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants Letts and Kinney, and each of them, are hereby ENJOINED from rejecting plaintiff's incoming first-class mail concerning correspondence schools unless the mail is otherwise excludible under a specific written policy or regulation of the Department of Corrections.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants deliver to plaintiff within ten days hereof a copy of the brochure entitled "How to Prepare For Your Paralegal Career," a copy of which is attached to the affidavit of Morris Martin.

Plaintiff may tax his costs.