In re Devon Earl TRANTER, d/b/a Devon E. Tranter Trust, Debtor.

Devon Earl TRANTER, d/b/a Devon E. Tranter Trust, Plaintiff,

v.

Rodney A. STOKES, Chief, Real Estate Division, State of Michigan, Department of Natural Resources, and Crystal N. Incorporated, a Michigan Corporation, Defendants.

Bankruptcy No. HG 92–82619.
Adv. No. 94–8024.

United States Bankruptcy Court, W.D. Michigan.

Aug. 17, 1994.

Louis R. Lint, Muskegon, MI, for debtor/plaintiff.

Kevin T. Smith, Asst. Atty. Gen., Lansing, MI, for defendant Rodney A. Stokes.

Perry G. Pastula, Wyoming, MI, for defendant Crystal N. Inc.

## *OPINION*

LAURENCE E. HOWARD, Chief Judge.

This matter comes before the court on defendants Rodney Stokes, Chief of the Michigan Department of Natural Resources Real Estate Division, and Crystal N. Incorporated's respective motions for summary judgment. In this adversary proceeding, debtor and plaintiff Devon Earl Tranter has asked the court to set aside the sale of certain real property that had been bid off to the State of Michigan for nonpayment of real property taxes and was subsequently sold to Crystal N. Incorporated. Defendants now move for summary judgment on the basis that the debtor lacks sufficient property interest in the lots and that the applicable redemption periods have run thereby preventing the debtor from redeeming the property. Plaintiff/debtor counters these motions on the basis that the bankruptcy estate has a valid interest in the property and that the automatic stay provision of 11 U.S.C. 362(a) bars the running of the third redemption period.

### *Background*

This dispute revolves around certain real property located in Muskegon, Michigan ("the property"), legally described as lots 1–6, 8 and west ½ of 9, block 349 of the original plat of the City of Muskegon. A four story hotel and two story motel complex occupy lots 1–6. Lots 8 and west ½ of 9 constitute a parking lot adjacent to the hotel/motel complex.

The taxes for tax year 1987 were not paid on the property. Michigan's General Property Tax Act, M.C.L. 211.1 *et seq.;* M.S.A. 7.1 *et seq.* ("the Act") provides for the disposition of property with unpaid taxes after three years. A brief overview of the Act is necessary to understand the chronology of events in this case.

In 1990 the lots went to tax sale for nonpayment of the 1987 taxes. M.C.L. 211.60, M.S.A. 7.104; M.C.L. 211.61, M.S.A. 7.105. The sale is held on the first Tuesday in May. M.C.L. 211.70, M.S.A. 7.115. There were no private bidders at the tax sale. Pursuant to the Act, when no private bids are received, the property is bid off to the state. M.C.L. 211.70, M.S.A. 7.115.

The Act provides that the taxpayer has until the first Tuesday in May of the year following the tax sale in which to redeem the parcel from the preceding year's tax sale ("the first redemption period"). M.C.L. 211.-74, M.S.A. 7.120.

Following expiration of the first redemption period (the first Tuesday in May of the year following the tax sale), title "vests" in the state. M.C.L. 211.67, M.S.A. 7.112. The Act refers to the state's title as being "absolute", but it clearly provides for defeasance of the state's title if the debtor redeems the property.

A second redemption period follows the first ("the second redemption period"). The second redemption period runs for six months, until the first Tuesday in November of the year following the tax sale. M.C.L. 211.131c, M.S.A. 7.190(1). For parcels bid to the state, that redemption period is extended until owners of a significant property interest in the lands have been notified of a hearing before the department of treasury. M.C.L. 211.131e, M.S.A. 7.190(3); M.C.L. 211.98, M.S.A. 7.151.

The statute then provides a third redemption period ("the third redemption period") which extends for 30 days following the date

of that hearing. M.C.L. 211.131e, M.S.A. 7.190(3). During that third redemption period, the property may be redeemed by paying delinquent taxes, special assessments, interest and certain penalties. M.C.L. 211.131e, M.S.A. 7.190(3).

### Facts

The taxes for tax year 1987 were not paid on the property. Pursuant to an order of the Muskegon County Circuit Court, the lots went to tax sale on May 1, 1990 for nonpayment of the 1987 taxes. At the tax sale, there were no private bidders on the parcels. Since no private bids were received at the tax sale, the property was bid off to the state.

On June 25, 1990, the property was transferred by quit claim deed from K.T.M. Corporation to Devon E. Tranter, Trustee of The Devon E. Tranter Trust. Thereafter, on an uncertain date in July 1990, a second quit claim deed was filed to replace the June 25, 1990 deed. The second deed conveyed the property from K.T.M. Corporation to The Devon E. Tranter Trust. Both deeds were signed by Devon E. Tranter in his capacity as President of K.T.M. Corporation.

On May 2, 1991, Devon E. Tranter filed a chapter 13 petition, but it was dismissed on October 17, 1991.

On May 7, 1991, the first redemption period ran and the title "vested" in the state. Expiration of the first redemption period *automatically* triggered the running of the second redemption period which would extend until owners of a significant property interest in the land have been notified of the required hearing before the department of treasury.

The current chapter 13 was filed on April 30, 1992. The automatic stay then became effective. 11 U.S.C. 362(a).

Attempting to fulfill its statutory requirement, the department of treasury served a notice of hearing by certified mail on Mr. Tranter. Nothing in the record indicates the exact date of the mailing but it appears to have been in July, 1992. The notice stated that the hearing was set for August 3, 1992 and that the redemption period would end on September 2, 1992. However, the state's records show that Mr. Tranter signed for delivery of the notice on August 5, 1992, two days *after* the date for the hearing.

On August 7, 1992, the Devon E. Tranter Trust asked the state for an extension until December 3, 1992 to redeem. The state replied by extending the redemption period until October 5, 1992.

On November 5, 1992, lot 8 and the west ½ of lot 9 were redeemed by the Trust. No redemption was made on lots 1–6.

The state held the six lots for sale at a public auction on March 25, 1993, but no bids were received. On March 31, 1993, Crystal N. Incorporated ("Crystal") filled out a Preliminary Application to Purchase State Land on the Market regarding lots 1–6 for $60,000 plus $3,010 in fees; on May 10, 1993, it was approved; and on May 12, 1993, Rodney Stokes, Chief of the Real Estate Division for the Department of Natural Resources for the State of Michigan, signed the deed to Crystal.

Crystal admits that its principals had been informed of the bankruptcy prior to the date of the purchase. The state admits to having received, prior to the March 1993 sale, a copy of the notice of stay at the sale location. In addition, the sale officer gave notice of the bankruptcy to prospective bidders prior to the sale.

The debtor has brought this action as a Complaint to Set Aside a Deed, asking that the deed from the state to Crystal be set aside because its transfer was a violation of the stay, and that fees and costs be awarded. Crystal filed a counter complaint, arguing that the debtor, individually, never had an interest in the property. Crystal contends that it is the Devon E. Tranter Trust which owned the property pursuant to the quit claim deed from K.T.M. Corporation. In the alternative, Crystal contends that even if the debtor had an interest, it is entitled to relief from stay.

The state filed various affirmative defenses along with its answer, including that the property did not belong to the debtor, but rather the Trust; that the debtor's interest has been extinguished since the three redemption periods have run; and that this

property was not subject to the automatic stay.

*LAW*

■ The first issue which the defendants raise in their motions for summary judgment is whether the property is even property of the estate. The property was quit claimed to, and is held in the name of, The Devon E. Tranter Trust. Defendants contend that since the trust holds the property, it ought not be included in the bankruptcy estate of Devon E. Tranter. However, this case was filed as Devon Earl Tranter, d/b/a The Devon E. Tranter Trust. Therefore, the property appears to be property of the estate. The fact that the case was filed with the trust as a d/b/a has not been contested or briefed.

Looking only at the interest of Mr. Tranter in the property, I find he certainly has a possessory interest sufficient to bring the property within the jurisdiction of the bankruptcy court. The sixth circuit has held that even a tenancy at sufferance is a possessory interest in real property within the scope of the estate in bankruptcy under section 541. *Convenient Food Mart No. 114, Inc. v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.)*, 968 F.2d 592 (6th Cir.1992).

In the trustee context, *In re Jones*, 121 B.R. 122 (Bankr.M.D.Fla.1990) held that the debtor/trustee's bare legal title to the trust property was sufficient to qualify it as property of the estate. Therefore, I hold that for the reasons stated above, this property is property of the estate.

The next question is whether the automatic stay affected the running of the three redemption periods and the corresponding issue of whether the state ever held absolute title to the property. As outlined above, the procedure for selling property for nonpayment of taxes which is required by state statute is somewhat involved.

At the heart of this case is whether the debtor's filing of bankruptcy stays this statutory procedure regarding tax sales. If so, the debtor would retain the right to cure the arrearage and redeem the property. The critical fact here is that the state's actions to effectuate the notice and hearing required to commence the third redemption period all took place *subsequent* to the debtor's filing.

This being a case of first impression, there exists no cases squarely addressing this issue. This case is similar to *In re Sabec*, 137 B.R. 659 (Bankr.W.D.Mich.1992) except we do not deal here with a sale of the property prior to the expiration of the three redemption periods. *Sabec* differs in that it dealt with a scenario where someone purchased the tax lien at the tax sale. The Act provides that in such instances that the second redemption period is not *automatic* but rather begins to run only when the tax purchaser takes certain affirmative actions. *Sabec* held that the cut-off date for a debtor to cure delinquent real estate taxes to be repaid over the life of a chapter 13 plan is the date when the second redemption period begins to run. However, *Sabec* specifically declined to address our situation where property is bid to the state. *Id.* at fn. 19.

The parties have looked to *In re Glenn*, 760 F.2d 1428 (6th Cir.1985) for guidance in determining whether the automatic stay barred the running of the redemption periods and thus the state's obtaining absolute title to the property. *Glenn* held that in a mortgage foreclosure proceeding, the redemption period would not be tolled by the filing of a bankruptcy. *Glenn* established an apparently plain standard that 11 U.S.C. 362(a) stays *acts*, not time, and therefore periods of redemption which expire on their own without any affirmative act by a party are not affected by the automatic stay. See, *In re Carr*, 52 B.R. 250, 259 (Bankr. E.D.Mich.1985). However, *Glenn* is not parallel to the case at bar. In addition to the fact that the state tax sale statute differs significantly from mortgage foreclosures, in *Glenn* the only remaining process was the running of a redemption period. In this case, the state had not yet provided the notice and hearing afforded owners of property when Mr. Tranter filed his petition. In other words, the state still had to take affirmative action post-petition to trigger the third redemption period.

■ Under the Act, the expiration of the third redemption period is the point at which

Mr. Tranter no longer has a right to redeem the property and which the state is no longer under a duty to accept untimely tenders of the default balance. This is the point at which the title ultimately "vests" irrevocably with the state and is no longer subject to defeasance by Mr. Tranter.

The state disagrees with this assessment of when title vests absolutely and cites *Montgomery Real Estate & Co. v. Department of Natural Resources*, 46 Mich.App. 696, 208 N.W.2d 617 (1973) and *Buckeye Union Fire Insurance Co. v. Michigan*, 383 Mich. 630, 178 N.W.2d 476 (1970) for the contention that title vests "absolutely" in the state at the end of the first redemption period. However, I am not persuaded to come to that same conclusion for two reasons. First, common sense tells us that there can be no "absolute vesting" as long as Mr. Tranter can redeem the property. Any "vesting" subject to defeasance cannot be *absolute*. Second, the statutory scheme in place when *Montgomery* and *Buckeye Union* were decided had only two redemption periods. Section 131e, with its third redemption period, was added in 1976. Therefore, those cases did not take this third redemption period into consideration as we do here.

The vesting of absolute title in the state is not final until the expiration of the third redemption period; Mr. Tranter still had an interest in the property until that time. The notice and hearing conducted by the state in July and August 1992 occurred *after* Mr. Tranter's April 1992 filing. These actions constitute the continuation of a proceeding against Mr. Tranter within the intended meaning of 11 U.S.C. 362(a)(3). They are violations of the automatic stay.

Once Mr. Tranter came under the protection of the Bankruptcy Code with a tangible ownership interest (i.e. the right to redeem) in the property, the stay affords him the opportunity to protect that interest via the means provided by the Bankruptcy Code. I conclude that the bankruptcy filing stayed the notice and the hearing required of the state under the third redemption period.

In view of my holding, the transfer from the state to Crystal has no effect on Mr. Tranter's right to cure and redeem through his chapter 13. The conveyance from the state to Crystal appears to be a quit claim deed. However, I make no determination here today as to that conveyance. The automatic stay under 11 U.S.C. 362(a) serves to protect Mr. Tranter's interest against either the state, Crystal, or both.

Crystal has requested that I grant them a lift of stay for cause. Any lift of stay for cause, whether brought by the state or Crystal, would present questions of fact which require an evidentiary hearing. Questions of fact cannot be addressed as part of these motions for summary judgment.

For the above stated reasons, the defendants' motions for summary judgment are DENIED.

As for the plaintiff/debtor, *Cool Fuel, Inc. v. Connett*, 685 F.2d 309 (9th Cir.1982) states:

> [i]f one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua sponte* grant summary judgment to the non-moving party. (citations omitted).

*Id.* at 311.

Judge Hillman held in accord with the ninth circuit in *Eckford–El v. Toombs*, 760 F.Supp. 1267 (W.D.Mich.1991):

> By moving for summary judgment, defendants invited an examination of the claim and defense and empowered the court to enter judgment against them, even without a cross-motion by plaintiff. If one "party moves for a summary judgment, and the court finds that the moving party is not entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made." 6 J. Moore, W. Taggart & J. Walker, Moore's Federal Practice ¶ 56–12, at 56–161 (2d ed. 1988). (citations omitted).

*Id.* at 1272.

Regarding whether the state's actions in giving notice and conducting the hearing re-

quired under M.C.L. 211.131e, M.S.A. 7.190(3) violated the automatic stay, I find that the actions taken by the state do violate the automatic stay. Summary judgment for the plaintiff/debtor to that extent is GRANTED.

The debtor has requested expenses and fees for bringing this adversary proceeding. A violation of the stay would allow me to assess fees and expenses. See, 11 U.S.C. 362(h). However, I do not believe an award of fees or expenses to be appropriate in this case. This is not an area of law in which precedent would have dictated to the defendants that they should not proceed.