**Ben SIMS, Plaintiff–Appellant,**

v.

**MEMPHIS PROCESSORS, INC., Defendant–Appellee.**

**No. 90–5747.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1991.

Decided Feb. 22, 1991.

---

Ben Todd (argued), Paul B. Cooper, III, Memphis, Tenn., for plaintiff-appellant.

DeWitt M. Shy, Jr. (argued), Burch, Porter & Johnson, Memphis, Tenn., for defendant-appellee.

Before MARTIN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Ben Sims, Jr. appeals a grant of summary judgment in a tort action for injuries he received when he slipped off a tractor trailer. *Sims v. Memphis Processors, Inc.*, 736 F.Supp. 779 (W.D.Tenn.1990). For the following reasons, we affirm the district court's grant of summary judgment..

On July 8, 1987, Ben Sims was employed by the Charles G. Lawson Trucking Co., a common carrier which maintained a trucking company on the yard of John Morrell's meat packing facility in Montgomery, Alabama. Morrell regularly utilized Lawson drivers to deliver animal hides, meats and entrails to Memphis Processors, Inc., located in Memphis, Tennessee. As a driver for Lawson, Sims drove a tractor rig and used a flatbed trailer for the delivery of animal

remains. In order to fill the flatbed trailer, removable vertical plywood side rails held stationary by intermittent grooved metal parts were used along the sides and across the rear of the trailer to enclose the substance to be transported. Once the tractor was filled, a heavy plastic tarp was placed over the top of the trailer and attached using elastic straps. At the time of the accident, Sims had been driving such a loaded trailer from John Morrell to Memphis Processors for five months, approximately seven times per week.

It was Lawson drivers' procedure to pick up a loaded trailer at John Morrell at a time which would permit the driver to arrive at Memphis Processors' facility by 7:00 a.m., at which time Memphis' employees would commence to unload the delivery. If the Lawson driver arrived in Memphis prior to 7:00 a.m., the driver would normally unhook the covering tarp on arrival and then sleep in the tractor until the trailer was unloaded.

On July 7, 1987, Sims picked up a loaded trailer at Morrell and subsequently arrived at Memphis' facility between 3:00 and 3:30 a.m. the following day. Upon arrival, Sims backed his trailer in the loading dock and began to unhook the elastic straps securing the tarp. Sims then walked up a set of stairs on Memphis' loading dock and, placing one foot on the loading dock and one on the edge of his trailer, removed the rear end rails of the trailer. After placing these end rails on the dock, Sims attempted to "step on the back of the truck and roll up my tarp. When I got ready to step off the dock, my feet slipped, and I fell...." Specifically, Sims notes that at the time of his fall he had placed his left foot upon the trailer and was in the process of removing his right foot from the loading dock when his left foot slipped causing him to fall.

Sims indicated through deposition testimony that he found the loading dock area abandoned with only one light turned on which "gave off a little glow." Sims also indicated that the loading dock was covered with a salt water solution, used in the transportation of the animal hides, when he arrived at the loading dock. During his tenure with Lawson, Sims had been informed by three of his co-workers about the slippery nature of the loading dock.

Sims filed this diversity action against Memphis Processors, Inc. on November 12, 1987, claiming that Memphis was negligent in failing to make the loading dock safe or warn him of the slippery, hazardous condition. The district court granted Memphis' motion for summary judgment, finding that, as a matter of Tennessee law, Sims' conduct constituted both contributory negligence and assumption of risk. *See Sims,* 736 F.Supp. at 787.

We review *de novo* the district court's published grant of summary judgment in favor of Memphis Processors and "apply the same test as that used by the district court in reviewing a motion for summary judgment." *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1161 (6th Cir.1988) (citing *Hand v. Central Transport, Inc.,* 779 F.2d 8, 10 (6th Cir.1985)).

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). The moving party bears the burden of "clearly and convincingly" demonstrating the absence of any genuine issues of material fact. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). If this burden is met, the nonmoving party must present "significant probative evidence," *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir. 1986), showing that genuine, material factual disputes remain to defeat summary judgment. *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Throughout, all evidence and inferences will be read in a light most favorable

to the nonmoving party. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

■ Under Tennessee law a landowner or tenant in possession owes to those upon his premises by express or implied consent a duty "of reasonable care under all of the attendant circumstances, foreseeability of the presence of the visitor and the likelihood of harm to him being one of the principal factors in assessing liability." *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984). Thus, "[a] business proprietor has a duty to exercise reasonable care and maintain his premises in a reasonably safe condition for his invitees." *Benson v. H.G. Hills Stores, Inc.*, 699 S.W.2d 560, 562 (Tenn.Ct.App.1985). However, a visitor on another's premises has the responsibility to exercise reasonable care for his own safety. *Mumford v. Thomas*, 603 S.W.2d 154, 156 (Tenn.Ct.App.1980). In Tennessee, assumption of risk is recognized as a defense to an owner's duty. *Gargaro v. Kroger Grocery & Baking Co.*, 22 Tenn.App. 70, 118 S.W.2d 561 (1938).

■ The elements of assumption of the risk are: (1) actual knowledge of the danger; (2) appreciation of the gravity of the danger; and (3) voluntary exposure to the danger. *Cathcart v. Cathcart*, 719 S.W.2d 301 (Tenn.Ct.App.1986) (citing *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 522 (Tenn.1973)); *Frazier v. Moore*, 651 S.W.2d 240 (Tenn.Ct.App.1983). Knowledge of the danger can be established if the danger was so obvious that one was bound to know of it. *O'Brien v. Smith Brothers Engine Rebuilders, Inc.*, 494 S.W.2d 787 (Tenn.Ct.App.1973). Further, such knowledge of danger by the plaintiff must be of a specific dangerous condition in contrast to general knowledge alone. *See Haga v. Blanc & West Lumber Co., Inc.*, 666 S.W.2d 61, 65 (Tenn.1984). Summary judgment on the issue of assumption of risk is appropriate only when it is so clear that plaintiff voluntarily and unreasonably encountered a known danger that reasonable minds could come to but one conclusion. *Cathcart*, 719 S.W.2d at 303; *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 282 (Tenn.Ct.App.1977). *See also Haga*, 666 S.W.2d at 65.

■ The record in this case establishes that, as a matter of law, plaintiff's conduct constituted an assumption of the risk. Sims' deposition testimony reveals that not only was he aware of the conditions that he contends led to his injury, he also fully understood and appreciated the particular hazard they presented. Sims indicated that before his accident on July 8, 1987, he was fully appraised of the condition of the loading dock area:

Q: And you say there were no lights on the platform?

A: No, sir.

Q: It was dark on the platform?

A: Yes, sir.

. . . .

Q: Now, when you went up on that platform originally, up the stairs, was there water on the platform?

A: There was salt, salt water that would be in the hides. When they move the hides it drips.

Q: So, that was there on the platform?

A: Yes, sir, and it's slippery.

Q: When you were up there during that five to ten minute period, did you have to be careful because it was slippery up there?

A: Yes, sir.

This testimony illustrates that prior to his accident, Sims possessed, "actual knowledge of the danger;" the slippery condition of the loading dock area. Furthermore, Sims fully understood the particular hazard this condition presented. Sims had been delivering animal hides to Memphis Processors for five months prior to his accident and had been told by three co-workers about the slippery nature of the loading dock area. Moreover, Sims admitted that while on the loading dock prior to his accident, he was attempting to be careful due to the slippery condition of the area.

■ Finally, Sims' testimony establishes that he disregarded these dangerous conditions and voluntarily exposed himself to them:

Q: What time did [Memphis Processors] start unloading there?

A: 7:00 o'clock.

....

Q: And you could have waited until shortly before or at 7:00 o'clock in the morning, couldn't you?

A: Yes, sir.

Q: But you decided to do it at 4:30 in the morning, between 3:30 and 4:00 in the morning, is that right?

A: Yes, sir. That was our procedure. When we got there we untarp the trailer, and then we can get in and sleep until they unload the whole thing.

Sims was at liberty to postpone taking off the tarp to his trailer until daylight which would have significantly reduced the likelihood of injury. We find ourselves in agreement with the district court that, "the facts in this case as established by the plaintiff's deposition show that the plaintiff knowingly exposed himself to a known and appreciated hazard...." *Sims*, 736 F.Supp. at 787.

Because we find that Sims' claim is barred by the doctrine of assumption of risk, we decline to reach the issue of contributory negligence, as doing so would be duplicative.

We, therefore, AFFIRM the judgment of the district court.