**FIRST OF AMERICA BANK—WEST MICHIGAN, Plaintiff,**

v.

**William J. ALT, M.D., Lind Alt, Harbor Laboratory, Inc., United States of America, and Cote La Mer, Inc., Defendant.**

No. 1:91–CV–1020.

United States District Court,
W.D. Michigan, S.D.

Dec. 22, 1993.

Alvin D. Treado, Culver, Lague & McNally, Muskegon, MI, for plaintiff.

Michael H. Dettmer, Asst. U.S. Atty., Grand Rapids, MI, John A. Lundquist, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This is a civil action brought by plaintiff First of America Bank—West Michigan ("FOA" or "Bank") to foreclose its mortgage on certain real property previously owned by William and Rosalinda ("Lind") Alt, and to determine the priority of its lien. The subject property is a condominium located in Cote La Mer, a subdivision in Ottawa County, Michigan. The property was recently sold by judicial sale, yielding net proceeds of $79,710.45. Those proceeds have been placed in escrow with the Court.

The United States contends that its tax lien against Lind Alt has priority over plaintiff's claimed mortgage interest in the property pursuant to the Internal Revenue Code, 26 U.S.C. § 6323. Both parties are now before the Court on contesting motions for summary judgment.

## FACTS

Lind Alt purchased the disputed Cote La Mer property on December 30, 1971. On April 16, 1982, Lind and William Alt filed their 1981 tax return with the Internal Revenue Service ("IRS"). A few months later, on October 11, 1982, the IRS made an assessment against the Alts for their unpaid taxes from 1981. On June 27, 1984, the Alts borrowed $501,000 from FOA in the form of a commercial loan, securing the loan with a mortgage on the condominium and two other pieces of property located in Muskegon County. The Bank recorded the mortgages by filing in Muskegon County, but not in Ottawa County where the Cote La Mer condo is located.

On or before April 15, 1985, the government contends that it issued a statutory notice of deficiency for the Alts' unpaid 1981 taxes.[1] Later in April of that year, the Alts commenced a Tax Court proceeding relating to their 1981 return. On May 27, 1986, the Tax Court entered a judgment against the Alts for taxes due in the sum of $83,655.40, plus negligence penalties. A few days later, on June 2, 1986, Lind Alt transferred the condominium to a corporation called Harbor Laboratory, Inc. ("Harbor Lab"), by quitclaim deed. Although the facts are unclear, Harbor Lab is apparently owned by Lind Alt. The deed was recorded on August 1, 1986, in Ottawa County. The IRS later found Harbor Lab to be a nominee or alter ego of the Alts. On June 13, 1986, the IRS made another assessment against the Alts, this time pursuant to the Tax Court's ruling in May.

On November 3, 1986, the IRS filed a tax lien against Lind and William Alt, but not Harbor Lab, in Ottawa County. The tax lien was for $178,280.87, for the tax period ending December 31, 1981. This lien initially referenced the assessment of October 11, 1982. On April 28, 1987, however, the IRS filed an amended tax lien, changing the assessment date to June 13, 1986, the date of the assessment which followed the Tax Court's ruling.

In August of 1987, the IRS sold other property of the Alts, realizing net proceeds of $94,770.80. These proceeds were applied against the Alts' 1981 tax liability.

---

1. Previously, the government contended that the notice of deficiency was issued in the spring of 1986.

By letter dated December 31, 1987, FOA requested proof of fire insurance for the Cote La Mer property from the Alts. Lind Alt responded that the loan had been paid in full. Subsequent negotiations between the Alts and the Bank ensued, whereby FOA agreed to refinance the Alts' loan on March 8, 1988, secured by the same property, including the condominium. This time, however, the mortgage was recorded in Ottawa County on April 28, 1988. On June 12, 1991, the IRS filed a notice of Federal Tax Lien against Harbor Lab in Ottawa County.

Throughout early 1991, FOA requested that the Alts obtain fire insurance on the Cote La Mer property. Effective June 26, 1991, the Bank independently obtained its own insurance coverage for the condo. A few months later, on November 1, 1991, FOA filed the present foreclosure action in Ottawa County Circuit Court. On November 12, 1991, the IRS filed further liens against the Alts' property for tax years subsequent to 1981.

The IRS contends that Lind Alt owes the United States $188,794.83 as of August 1, 1993, on the 1981 tax liability. At the judicial sale of the Cote La Mer condo, the property grossed approximately $91,500. After payment of back taxes on the property, U.S. Marshal fees, dues owed to the condominium association, and utility costs incurred by the association in maintaining the property, $79,710.45 remained. This sum was escrowed with the Court, pending disposition of this matter.

In October of 1992, FOA served its first set of interrogatories and document production requests in this case on the IRS. The IRS objected to most of these requests and inquiries. On January 25, 1993, Magistrate Judge Scoville granted the Bank's motion to compel discovery, and the IRS was ordered to furnish FOA with supplemental answers. In its subsequent answers, the IRS indicated that it was appropriate for it to file a notice of deficiency for the tax year 1981 in the spring of 1986, as the Alts misrepresented their 1981 income by over 25%, giving the IRS a six-year statute of limitations. These subsequent answers proved inadequate to FOA, however, and on March 31, 1993, Judge

Scoville issued another order compelling the IRS to comply with discovery requests. In this set of answers, the IRS no longer claimed that the Alts had misrepresented their income by over 25%. Rather, the IRS claimed that notice of deficiency had issued on or before April 15, 1985, pulling it within the three-year statute of limitations applicable in most situations. The IRS also revealed for the first time that the Alts had filed a Tax Court petition in 1985.

## DISCUSSION

Both FOA and the United States are now before this Court on cross-motions for summary judgment. The briefs in this case present a myriad of issues for resolution. First and foremost, is the question, "Who has priority in the property?" Although it appears the IRS does, FOA challenges the priority of the federal tax lien on several grounds. The second issue is whether the equitable doctrines of laches or estoppel apply in this case. The third issue concerns whether the doctrine of marshalling may be applied to the IRS. The fourth question presented by the briefs asks whether FOA is entitled to discovery sanctions due to IRS actions (or nonactions) in the course of this litigation. The final issue presented for resolution is whether FOA is entitled to reimbursement for the insurance it obtained on the Cote La Mer property. Applying the standards for summary judgment, the Court will examine each of these issues in turn.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Sims v. Memphis Processors, Inc.,* 926 F.2d 524, 526 (6th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson*

*Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

 The moving party bears the burden of clearly and convincingly demonstrating the absence of any genuine issues of material facts. *Sims*, 926 F.2d at 526. The court must consider all pleadings, depositions, affidavits, and admissions on file and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party carries this burden, the nonmoving party must present significant probative evidence showing that genuine, material factual disputes remain to defeat summary judgment. *Sims*, 926 F.2d at 526. The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* The court must make purely legal judgments that go to the nature and sufficiency of the complaint as well as the evidence put forward to support it. *Val–Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110, 1113 (6th Cir.1991). Applying these principles to the present case, this memorandum concludes that FOA's motion for summary judgment shall be denied. The government's motion shall be granted.

### I. Priority of Lien

The first question presented for resolution in this matter is whose interest in the Cote La Mer property has priority. FOA contends that its mortgage on the condominium has priority, while the United States claims that the federal tax lien prevails. This is a question of both federal and state law.

 In Michigan, interests in real property are recorded with the register of deeds in the county where the property is located. All recorded liens, rights, and interests in property take priority over subsequent owners and encumbrances. M.C.L.A. § 565.25. Where an individual fails to record a lien or interest in property, that interest is void as against any subsequent interest holder who purchased the interest in good faith for valuable consideration. M.C.L.A. § 565.29. A person takes in "good faith" if he or she takes without notice of the prior unrecorded interest. *Michigan Nat'l Bank & Trust Co. v. Morren*, 194 Mich.App. 407, 410, 487 N.W.2d 784 (1992). Thus, Michigan has adopted what is frequently known as a "race-notice" statute: the first interest holder to record takes priority, unless that individual has notice of a prior unrecorded interest.

 The Internal Revenue Code alters the scheme of priorities under Michigan law. Under 26 U.S.C. § 6321, a lien on an individual's property arises when the individual is liable to pay a tax, but neglects or refuses to pay the tax after notice of the liability is given. However, "[t]he lien imposed by section 6321 shall not be valid against any ... holder of a security interest ... until notice thereof which meets the requirements of [26 U.S.C. § 6323(f) ] has been filed." 26 U.S.C. § 6323(a). Section 6323(f) requires that notice of a lien on real property be filed according to the laws of the state where the property is located. Accordingly, the tax lien has priority if it was recorded *first* with the register of deeds in the county where the property is situated.

On November 3, 1986, the IRS filed a tax lien against Lind and William Alt in Ottawa County, Michigan, the location of the Cote La Mer property. The Bank had recorded its mortgage on the property in Muskegon County in 1984, but did not file in Ottawa County until April of 1988. A cursory review of the facts thus suggests that the IRS has priority in the condominium. FOA disputes this conclusion, however, on four separate grounds. First, FOA challenges the validity of the IRS assessment against the Alts, which gave rise to the lien. Second, FOA contends that the statute of limitations on the collection of taxes has expired. Third, the Bank argues that the lien did not attach to the Cote La Mer condominium, as that prop-

erty had been transferred to Harbor Lab on June 2, 1986. Finally, FOA maintains that a genuine issue of material fact remains as to whether the IRS had notice of the Bank's prior unrecorded interest in the property. Such notice is relevant, the Bank contends, to determining the priority of the tax lien.

### a. Validity of the IRS Assessment

■ FOA challenges the validity of the government's tax lien, claiming that the assessments pursuant to which the liens were filed were untimely and not preceded by notices of deficiency. Under 26 U.S.C. § 6501(a), taxes must be assessed within three years of the date on which the return was filed. In this case, two assessments were made for the Alts' 1981 taxes: one on October 11, 1982, and the other on June 13, 1986.

The first assessment clearly falls within the statutory three-year period. The second assessment, however, falls well outside this time frame. Supplemental assessments are permitted by the Internal Revenue Code, but they too must fall within the three-year period of limitations. See 26 U.S.C. § 6204(a); Brookhurst, Inc. v. United States, 931 F.2d 554, 557 (9th Cir.1991). FOA also contends that the government failed to provide the Alts with notice of deficiency for the June 1986 assessment. Initially, the IRS contended that notice was served sometime in the spring of 1986; later the government alleged that notice was issued before April 15, 1985, pulling it within the three-year statute of limitations. The government has no evidence to support these assertions, however.[2]

The IRS does not appear to argue that the June 13, 1986, assessment fell inside the statutory time frame, or that it can prove that notice was sent prior to April 15, 1985. Rather, the government contends that the Bank lacks standing to challenge the assessment. Under 28 U.S.C. § 2410(a), sovereign immunity of the government is waived, permitting a party to sue the United States to foreclose a mortgage on property upon which

the government has a lien. This is essentially a suit to "quiet title." However, the courts have construed § 2410 to permit only challenges to the procedural regularity of the lien, not the underlying tax liability or merits of the assessment. Pollack v. United States, 819 F.2d 144, 145 (6th Cir.1987). FOA contends that it asserts merely procedural defects in the assessment, and not the underlying tax. The IRS counters that a challenge to the notice is a challenge to the very merits of the assessment.

The case law provides little guidance on the resolution of this issue. In Guthrie v. Sawyer, 970 F.2d 733, 737 (10th Cir.1992), the Tenth Circuit held that a taxpayer could not raise a procedural defect in the issuance of a deficiency notice in a quiet title action because the purpose of the notice requirement was to allow the taxpayer to challenge the amount of the assessment in Tax Court. The challenge thus went to the underlying tax liability itself. However, the taxpayer was found to be entitled to relief under another statute, and the Court held that the failure of the IRS to send a notice of assessment could be challenged under § 2410. Other cases suggest that all taxpayer challenges to notice, be it notice of deficiency or assessment, do qualify as claims of procedural irregularities. In an unpublished decision, the Sixth Circuit permitted a taxpayer to challenge notice under § 2410, although it ultimately ruled against him on the merits. See Williams v. United States, 900 F.2d 261 (6th Cir.1990); see also Gentry v. United States, No. CIV–1–89–337, 1991 W.L. 191246 (E.D.Tenn.1991) (citing Williams). Thus, it would appear that in this Circuit, a taxpayer may challenge the validity of the assessment and the resulting lien by asserting that no deficiency notice was issued. A taxpayer challenge to the assessment on the grounds that it fell outside the statutory period similarly appears to constitute a procedural challenge.

The result may differ, however, where the individual claiming procedural irregularities

---

2. The government does note that a Tax Court proceeding was commenced by the Alts in April of 1985, suggesting that notice was received prior to that petition. "The notice of deficiency is ... the 'ticket' into the Tax Court that allows a

taxpayer to challenge the tax assessment before paying it." Guthrie v. Sawyer, 970 F.2d 733, 735 (10th Cir.1992). It thus seems likely that notice was received sometime in April of 1985 or before.

which render the lien invalid is not a taxpayer, but a third party. In its brief, FOA cites only one case from 1965 to support its contention that third parties may challenge the validity of IRS liens on procedural grounds. *See Falik v. United States*, 343 F.2d 38 (2d Cir.1965). That case, however, made only a passing reference to the issue. Furthermore, *McEndree v. Wilson*, 774 F.Supp. 1292 (D.Colo.1991), cited by the Bank during oral argument, is inapposite. Although *McEndree* addressed third-party standing under § 2410, that case did not involve a procedural challenge to the validity of an IRS lien as the plaintiff conceded the validity of the assessments. *Id.* at 1296. Rather, the plaintiff merely sought to assert the priority of its lien over the federal tax lien. In the present case, no one disputes that FOA may attempt to argue that its mortgage takes priority over the federal lien. There is no authority, however, which permits the Bank, as a third party, to argue that the lien is procedurally invalid. As the procedural provisions of the Internal Revenue Code appear to exist to protect the taxpayer only, not third parties, FOA lacks standing to challenge the procedural regularity of the lien. This challenge to the IRS' priority must fail.

**b. Collection of Taxes**

FOA claims that any interest that the government had in the property has expired, as the IRS had only six years from the date of assessment to collect the tax owed pursuant to 26 U.S.C. § 6502(a)(1). Because the first assessment issued on October 11, 1982, the government's lien only attached until 1988, the Bank argues.

The government notes, however, that § 6502(a)(1) was amended effective November 5, 1990, to give the IRS a ten-year collections period. This ten-year period applies even to taxes assessed before the effective date, if the previous six-year period had not yet expired as of November 5, 1990. Although counting from the 1982 assessment, the six-year time frame expired in 1988, the six-year period had not expired by November 1990, if we count from the June 13, 1986 assessment. The government would have ten years in which to act. Thus, if the 1986 assessment is the proper trigger for the col-

lections period, then the IRS has until June of 1996 to collect the Alts' unpaid taxes.

Due to the conclusion of the preceding section that FOA does not have standing to challenge the validity of the assessment, the Court assumes that the 1986 assessment is valid. Accordingly, the period of time in which the IRS may collect on the deficiency has not expired. This challenge by FOA also fails.

**c. Lien as Against Property of Harbor Lab**

 FOA next argues that the federal tax lien did not attach to the Cote La Mer property as that property was transferred to Harbor Lab by quitclaim deed on June 2, 1986. Because the lien recorded in Ottawa County only referenced the property of the Alts, it did not attach to the condominium owned by Harbor Lab, the Bank contends. The IRS did not file a lien against Harbor Lab in Ottawa County until June of 1991, after FOA had perfected its interest.

The IRS claims that the transfer to Harbor Lab is ineffective to defeat the tax lien as the deed was recorded after the assessment of the tax liability. The Supreme Court has ruled that "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien." *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958). Although the transfer occurred on June 2, 1986, the deed was not recorded in Ottawa County until August 1st, well after the June 13th assessment. Furthermore, the IRS had made a previous assessment in October of 1982. In these circumstances, the Alts should not be given the power to defeat the federal tax lien through a quitclaim transfer. The lien did attach to the Cote La Mer property. The Bank's third challenge to the priority of the government's lien is without merit.

**d. IRS' Notice of Prior Unrecorded Interest**

 FOA also contends that the federal tax lien should not take priority as the government was on notice of the prior unrecorded interest held by the Bank. Under Michigan law, a lienholder has priority if he or she recorded first and had no notice of a prior

unrecorded interest. The IRS argues that notice of the mortgage is irrelevant, as priority determinations are controlled by federal, not state, law.

Section 6323 of the Internal Revenue Code dictates that a federal tax lien has priority if it has been properly recorded under state law. 26 U.S.C. § 6323(a), (f). The Code imposes no notice requirement. State law appears to matter only to the extent it directs the government where to file the tax lien. Moreover, any notice requirement would render litigation over competing liens highly complex. If federal tax liens were forced to yield every time a governmental department had notice of a prior unrecorded interest, the tax lien system would be hampered. The government does not elect to extend credit based upon the security available, but is an involuntary creditor. Accordingly, the Court finds that notice of a prior unrecorded interest is irrelevant to determining lien priority under the Internal Revenue Code.

As the preceding discussion indicates, the federal tax lien does take priority over the Bank's mortgage on the Cote La Mer property. Summary judgment on this question shall issue for the government.

## II. Doctrines of Laches and Estoppel

 The second issue raised in the briefs concerns the applicability of the equitable doctrines of laches and estoppel. In its brief, FOA contends that pursuant to the doctrine of laches, the Bank's interest in the Cote La Mer property should be given priority over the government's tax lien. FOA notes that the Alts owed their 1981 taxes for almost ten years before the IRS instituted any legal proceedings or made any effort to enforce the lien on the condominium. Had the Bank been on notice earlier of the IRS' interest, FOA argues, it would not have gone ahead with the initial loan in 1984 or the refinancing agreement in 1988. Further, the issue is only now before this Court because the Bank forced a sale of the disputed property and filed the present action. Given these circumstances, FOA contends, equity demands that the Bank's mortgage prevail over the federal tax lien.

As the government notes, however, the doctrine of laches may not be invoked against the United States when it seeks to enforce its rights. *See United States v. Weintraub,* 613 F.2d 612, 618 (6th Cir.1979). This well-established principle is "based upon the important public policy of preserving public rights and revenues from the negligence of public officers." *Id.* During oral argument, the Bank conceded that the doctrine of laches does not apply in this case.

 Alternatively, FOA argues that the IRS should be estopped from claiming an interest in the property. But again, estoppel may not be invoked against the government, unless it is based upon an allegation of affirmative misconduct. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Giles v. Carlin,* 641 F.Supp. 629, 635 (E.D.Mich.1986) (longstanding tradition that "estoppel may not be invoked against the government"); *Tonkonogy v. United States,* 417 F.Supp. 78, 79 (S.D.N.Y.1976) (estoppel may be invoked only where allegation of affirmative misconduct). The only "affirmative" action which the Bank alleges, however, occurred during the discovery phase of this litigation. Such conduct has no bearing on the real issue in this case: Whose interest in the property should prevail? Estoppel would only apply if FOA demonstrated that the government had taken an affirmative step which caused the Bank to loan money to the Alts in exchange for a mortgage in the Cote La Mer property or to refinance the loan later. No such allegation has been made. Discovery conduct is simply irrelevant to the estoppel question.

The equitable doctrines of laches and estoppel may not be invoked in these circumstances against the government. Accordingly, there is no dispute here meriting a trial. The IRS' motion for summary judgment shall be granted as to these issues.

## III. Doctrine of Marshalling

 FOA next contends in its brief that the IRS should be required to marshall the assets from previously seized property. Essentially, the Bank wants this Court to order the IRS to apply all previously seized assets to the 1981 tax liability, as that is the earliest

tax deficiency. FOA argues that the government is refusing to do so, applying the assets to deficiencies in later years, in order to protect its interest in the Cote La Mer property.

Under § 5374.2(d) of the Internal Revenue Manual, agents of the IRS are required to apply all proceeds from the sale of seized property toward the satisfaction of the earliest tax liability. The provision clearly requires the government to marshall assets. However, as the government notes, the Manual was developed solely to guide the internal administration of the IRS, and confers no legal rights on taxpayers or third parties. *See United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982). Furthermore, there exists no "right of marshalling" against the United States. *United States v. Eshelman,* 663 F.Supp. 285 (D.Del.1987). A junior lienholder cannot compel the IRS to marshall its liens. *In re Ackerman,* 424 F.2d 1148 (9th Cir.1970); *United States v. Herman,* 310 F.2d 846, 848 (2d Cir.1962).

■ During oral argument, FOA conceded that the doctrine of marshalling is not applicable. Rather, the Bank requested that the Court invoke its "equitable powers" to require the IRS to apply the seized assets to the earliest tax liability. FOA provided the Court with no reason why it should exercise its powers in this fashion, however. Accordingly, the Court finds that the government shall prevail on this issue.

## IV. Discovery Sanctions

■ The fourth issue raised in the briefs focuses on whether FOA is entitled to a default or attorney fees as a sanction against the government. Under Fed.R.Civ.P. 37(b)(2)(C), the Court may render a default against a party who fails to obey an order to provide or permit discovery. Alternatively, the Court may require a party against whom a discovery order is issued to pay the reasonable expenses, including attorney fees, of the party who sought the order. Fed.R.Civ.P. 37(a)(4). FOA claims entitlement to these sanctions due to the various discovery battles it has had with the IRS.

FOA served its first set of interrogatories and document requests on the IRS in October of 1992. The IRS refused to respond to fifteen of the 21 interrogatories and seven of the eight document requests on grounds of relevance. Magistrate Judge Scoville issued an order on January 25, 1993, compelling the government to furnish supplemental answers. In the first set of supplemental answers which followed, the IRS claimed that the Alts had underreported their income from 1981 by more than 25%, and that a notice of deficiency had issued in the spring of 1986. Because the Alts had misrepresented their income by more than 25%, the government had six years from April 16, 1992, the date of the 1981 filing, to issue notice, and thus the notice was timely. On March 31, 1993, Judge Scoville issued another discovery order, requiring the IRS to provide details on the 25% claim. In its second set of supplemental answers, produced in response to the March discovery order, the government stated that it did not contend that the Alts had underreported their 1981 income by more than 25%. Instead, the IRS contended that notice had issued before April 15, 1985, pulling it within the normal three-year period of limitations. The government also mentioned for the first time the Alts 1985–86 Tax Court proceeding.

FOA contends that these responses by the IRS constitute dilatory and obstructionist conduct, entitling the Bank to default under Rule 37. Default is an extreme sanction, and appears wholly unwarranted in this case. The evidence indicates that the IRS has complied with the discovery orders. The government explains its contradictory responses to FOA's interrogatories by stating that the file on the Alts was temporarily misplaced, resulting in incorrect information for a period of time. This contention is supported by the affidavit of attorney Alexandra Nicholaides.

Attorney fees and costs incurred in seeking the two discovery orders from Judge Scoville, however, may be warranted in this case. It does appear that the government refused to answer several requests and provided FOA with information that it did not fully verify. The Bank requests fees and costs in the amount of $5,916.34. This mat-

**1352**

ter shall be referred to Magistrate Judge Scoville for further resolution.

## V. Reimbursement for Insurance Coverage

■ The final issue presented in this case concerns the fire insurance coverage obtained by FOA on the Cote La Mer property. After the Alts neglected to obtain coverage on the condominium in 1991 as requested by the Bank, FOA independently obtained an insurance policy. FOA now seeks to recover the $717.18 in premiums it paid from the proceeds now in escrow with the Court. The IRS refuses to permit the Bank to recover these costs, claiming that the insurance policy was for the benefit of FOA alone, and not all creditors.

Neither party cites any law in support of their respective positions. It appears the government should prevail on this issue, as the policy never became the property of the taxpayer, and thus the tax lien never attached. Accordingly, if the property had been destroyed, only the Bank would have been entitled to the insurance proceeds. Thus, FOA is not entitled to reimbursement for the insurance costs. Summary judgment shall attach for the government.

### CONCLUSION

In sum, FOA's motion for summary judgment shall be **denied** while the government's motion shall be **granted**. FOA's request for attorney fees and costs incurred in seeking the January 25, 1993, and March 31, 1993, discovery orders shall be referred to Magistrate Judge Joseph G. Scoville for disposition.

**IT IS SO ORDERED.**