**Paul OLSZONICKI, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 1:91cv2096.**

United States District Court,
N.D. Ohio.

May 12, 1994.

Daniel R. McCarthy, Charles P. Royer, Mark B. Cohn, McCarthy, Lebit, Crystal, and Heiman, Cleveland, OH, for plaintiffs.

Annette G. Butler, Asst. U.S. Atty., Cleveland, OH, Thomas R. Jones, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

BATTISTI, District Judge.

Before this Court are Plaintiffs' Motion for Summary Judgment and Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. For the foregoing reasons this Court grants Plaintiffs' Motion for Summary Judgment.

## FACTS

Plaintiff, Paul Olszonicki graduated from high school in 1933. He has no other formal education (Depo. of Paul Olszonicki at 7). Plaintiff Ann Olszonicki was forced to quit school before completing the tenth grade, and she has no other formal education (Depo. of Ann Olszonicki at 4). Paul Olszonicki was diagnosed with diabetes in 1961 or 1962 (Depo. of Paul Olszonicki at 12). This condition impaired his eyesight, resulting in laser treatments and the use of a magnifying glass (*Id.* at 19). He also suffers from a loss of hearing (*Id.* at 14).

In 1946, Plaintiffs went into business with Mr. Olszonicki's brother, opening Olson's Market, a grocery store. They sold the grocery store in 1963 and purchased a bar, Hank's Cafe, seven apartments and four stores in East Cleveland. They sold the bar in 1975 and the remaining property in 1978 (*Id.* at 8–11).

In 1963, on the recommendation of their attorney, Plaintiffs hired Anthony Novak to prepare and file their business and personal tax returns. Novak was registered as a certified public accountant in the State of Ohio from September 8, 1960 until his death on March 14, 1992, and specialized in liquor owners' taxes (*Id.* at 16). Novak primarily dealt with Mr. Olszonicki since Mrs. Olszonicki was not involved in the day to day operation of the business. Due to Mr. Olszonicki's poor eyesight and his trust for Novak, he signed the documents Novak told him to sign (*Id.* at 18–19). Mrs. Olszonicki generally signed documents without reading them because she also trusted Novak (Depo. of Ann Olszonicki at 10).

Between 1963 and 1978, while relying on Novak as their accountant, Plaintiffs did not experience any problems with their federal tax returns.[1] In 1975, Plaintiffs sold their interest in Hank's Cafe, and in 1978 they sold the apartments and stores. At that time, Social Security benefits were Plaintiffs' only source of income, other than the gain from the sale of property. In 1979, Mr. and Mrs. Olszonicki went to the office of the Internal Revenue Service, where they were told that they were not required to file tax returns since they did not have enough earned income (Depo. of Paul Olszonicki at 19–20).

---

1. Plaintiffs did, however, have a problem with one state tax return which required that they pay "a little more state tax" (Depo. of Paul Olszonicki at 19).

Paul Olszonicki was hospitalized in 1977 due to a foot ailment. While recuperating, he entered into a conversation with a gentleman who was knowledgeable about gold and silver and who gave Plaintiff several investment tips (*Id.* at 21–22). Paul Olszonicki relied on the advice, and between 1975 and 1980 invested nearly $75,000 in silver and silver bullion through a Canadian investment company with ties to the Foreign Commerce Bank in Switzerland. (Depo. Paul Olszonicki at 23). In 1980, Plaintiffs sold their investment in silver for $1,315,000, generating a profit of $1,235,000 (*Id.* at 25). Novak arranged for the transfer of the proceeds from the sale of the silver to Germany, and represented to Plaintiffs that $84,000 was paid as tax in Germany in connection with the transaction. On the advice of Novak, Plaintiffs agreed to lend $1,000,000 to Novak's cousins Kazimir and Sonja Mavko in Germany in return for two cognovit notes yielding eight percent interest (*Id.* at 28). The cognovit notes were signed by Anthony Novak on behalf of Inter–Mercat Company. One note was for $750,000 and the other was for $250,000 (*Id.* at 36–38).

Novak assured Plaintiffs they would be paying German tax and would not be required to pay federal income tax in the United States (Depo. of Paul Olszonicki at 39). Each year from 1980 until 1987, Novak delivered nearly $50,000 in cash to Plaintiffs as payment of interest on the million dollar loan. He told them that taxes had been withheld, and that no United States federal tax was due (Depo. of Paul Olszonicki at 39–40).

In 1986, Plaintiff Mrs. Olszonicki contacted her niece, who is an attorney, and told her of Plaintiffs' investment and that Plaintiffs were not filing United States federal tax returns. The niece suggested Plaintiffs contact their attorney, who in turn recommended Daniel R. McCarthy, a Cleveland attorney specializing in federal income taxation. Upon the advice of McCarthy, Plaintiffs filed amended returns (Depo. of Paul Olszonicki at 53). In doing so, Plaintiffs paid $1,106,153 in tax, interest and penalties to the United States government.

On June 28, 1990, Plaintiffs brought an action under 28 U.S.C. § 1340 for a refund of penalties paid by them for the years 1980 through 1987, totalling $198,670.68 plus interest, attorney fees and costs.

On April 6, 1993, Plaintiffs filed a Motion for Summary Judgment pursuant to Federal Rule 56 in which they contend that they reasonably relied on the advice of Novak that they were not required to file federal income tax returns.

In its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, Defendant United States argues that the motion must be overruled because the case hinges on the credibility of Paul Olszonicki, and that his credibility is an issue of fact which precludes the granting of summary judgment. Additionally, Defendant avers that Plaintiffs' motion should be denied pursuant to Rule 56(f) because Defendant sought additional affidavits to resolve the issue of the Olszonicki's credibility. On March 3, 1993, Tom Jones, an attorney with the United States Department of Justice, spoke to Kazimir Mavko who stated that he would respond in writing if the United States sent him a letter (Declaration of Thomas R. Jones ¶ 10). The United States wrote to Kazimir Mavko on March 9, 1993 requesting information about the business and assured the Court that the return letter from Germany would arrive by the 19th of May (Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 5). Defendant, however, failed to obtain an affidavit from Sonja or Kazimir Mavko prior to the oral argument held on December 16, 1993, and has failed to offer any additional evidence that would support its contention that Paul Olszonicki lacks credibility (Tr. 12/16/93 Hearing on Motion for Summary Judgment).

## LEGAL ANALYSIS

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the court must view all facts and inferences in a light most favorable to the nonmoving party. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526–27 (6th Cir.1991).

"The moving party has the burden of showing the absence of any genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "If this burden is met, the nonmoving party must present 'significant probative evidence' showing that genuine, material factual disputes remain to defeat summary judgment." *Sims*, 926 F.2d at 526 (citations omitted). The nonmoving party is required "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here, Section 6651 of the Internal Revenue Code sets forth the penalties and the exceptions to the penalties for failing to file a return or to pay income tax. 26 U.S.C. § 6651(a). Section 6651(a) states in pertinent part:

(a) Addition to the Tax—In case of failure—

(1) to file any return required under authority of subchapter A of Chapter 61 (other than part III thereof), subchapter A of Chapter 51 (relating to distilled spirits, wines, and beer), or a subchapter A of Chapter 52 (relating to tobacco, cigars cig-arettes, and cigarette papers and tubes), or of subchapter A of Chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), *unless it is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

*Id.* (emphasis added).

■ In order to avoid the imposition of penalties under this section, the substantive law provides that the taxpayer must prove that the failure to file was "due to reasonable cause," and that the failure did not result from "willful neglect." *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 690, 83 L.Ed.2d 622 (1985) (quoting I.R.C. § 6651(a)(1)). In *Boyle*, the Court defined "willful neglect" as "a conscious, intentional failure or reckless indifference." *Id.* at 245–246, 105 S.Ct. at 690. (citing *Orient Inv. & Finance Co. v. Commissioner*, 166 F.2d 601, 602 (1948)); *Hatfried, Inc. v. Commissioner*, 162 F.2d 628, 634 (CA3 1947); *Janice Leather Imports Ltd. v. United States*, 391 F.Supp. 1235, 1237 (S.D.N.Y.1974); *Gemological Inst. of America, Inc. v. Riddell*, 149 F.Supp. 128, 131–132 (S.D.Cal.1957).

According to Treasury Regulations, "reasonable cause" exists when a taxpayer "exer-

cised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if paid on the due date." 26 C.F.R. § 301.6651(c)(1). "[W]hether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a question of law." *Roberts v. Commissioner,* 860 F.2d 1235, 1241 (5th Cir.1988) (citing *Boyle,* 469 U.S. at 249 n. 8, 105 S.Ct. at 692 n. 8).

■ The advice of an accountant or attorney pertaining to whether a client should file a tax return concerns an issue of law. *United States v. Boyle,* 469 U.S. 241, 250, 105 S.Ct. 687, 692, 83 L.Ed.2d 622 (1984). It is reasonable for a taxpayer to rely on the advice of an accountant regarding an issue of law. *Id.* at 251, 105 S.Ct. at 692–93. As noted by the Supreme Court in *Boyle:*

> Courts have frequently held that "reasonable cause" is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken (citations omitted). . . . When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. (Citation Omitted) "Ordinary business care and prudence" do not demand such actions.

*Id.* 250–251, 105 S.Ct. at 692–93 (1984).

The Fifth Circuit addressed the issue of "reasonable cause" in *Denenberg v. United States,* 920 F.2d 301 (5th Cir.1991) *cert denied,* —— U.S. ——, 112 S.Ct. 53, 116 L.Ed.2d 30 (1991) summarizing the case law and separating the cases into four distinct categories:

(1) The taxpayer's reliance on an agent to comply with a fixed and unambiguous statutory deadline for filing returns does not constitute "reasonable cause for delay." (citations omitted)

(2) The taxpayer's reliance on his agent to ascertain the correct filing date for returns does not constitute "reasonable cause" for delay. (citations omitted)

(3) The taxpayer's reliance on the advice of his agent that he need not meet a return filing deadline (or file a return at all) *because no taxes are due does* not constitute "reasonable cause" for delay. (citations omitted)

(4) The taxpayer's reliance on the advice of his accountant or tax attorney that no return is due *does* constitute "reasonable cause" for delay. (emphasis in original) (citing *Boyle,* 469 U.S. at 250 [105 S.Ct. at 692]; *Fleming v. United States,* 648 F.2d 1122, 1129 (7th Cir.1981); *United States v. Kroll,* 547 F.2d 393, 395–96 (7th Cir.1977); *Commissioner v. American Ass'n of Eng'rs Employment, Inc.,* 204 F.2d 19, 21 (7th Cir.1953); *Burton Swartz Land Corp. v. Commissioner,* 198 F.2d 558, 560 (5th Cir.1952); *Haywood Lumber & Mining Co. v. Commissioner,* 178 F.2d 769 (2d Cir.1950); *Orient Inv. & Fin. Co. v. Commissioner,* 166 F.2d 601 (D.C.Cir.1948); *Hatfried v. Commissioner,* 162 F.2d 628 (3d Cir.1947); *Estate of DiPalma v. Commissioner,* 71 T.C. 324, 327 [1978 WL 3249] (1978).

*Denenberg,* 920 F.2d at 303–304.

■ The instant dispute falls within the framework of the fourth category. It must therefore be determined whether there are any genuine issues of material fact relating to the reasonableness of Plaintiff's reliance on the advice of their accountant Anthony Novak.

Defendant argues that the granting of summary judgment would be inappropriate because of questions raised concerning the credibility of Mr. Olszonicki. It relies on the proposition that a judge may not make credibility determinations when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106

S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, Defendant must present sufficient evidence to support its contention that an issue of credibility exists. *Anderson* teaches that:

> [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Id.* at 247–248, 106 S.Ct. at 2510 (emphasis in original). Here, the quantity and quality of evidence presented by the Defendant in its response to Plaintiffs' Motion for Summary Judgment would not enable a jury to return a verdict in its favor.

In *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988), the Court of Appeals of the Tenth Circuit recognized the need for a defendant to respond to a motion for summary judgment with evidence, not mere speculation:

> In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial (citations omitted). "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party. The litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."

*Id.* at 794; (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2nd Cir.1980)).

Defendant states that "[c]ounsel for the United States has not found an unequivocal statement in the depositions indicating that Mr. Novak told the Olszonickis they did not have to file federal income tax returns." (Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 7–8). The record is clear that Anthony Novak did indeed advise Plaintiffs that no federal income tax returns were due regarding the sale of silver and the interest payments on the cognovit notes. According to statements made by Mr. Olszonicki at his deposition, Anthony Novak told Plaintiffs that no United States tax was due as a result of the silver transaction, but that a 30 percent German tax was due for the transfer of the money from Switzerland to Germany (Depo. of Paul Olszonicki at 31).

Q What, if anything, did Tony tell you about the United States taxes that would have to be paid or not paid on the transfer of this money?

A He said by paying the German tax, there'd be no troubles.

Q Did you believe him?

A Yes.

Q Did he tell you that—anything about the actual filing of a tax return in the United States?

A No. No, he says, by paying the tax in Germany, there'd be no tax due here.

(Depo. of Paul Olszonicki at 38–39).

In addition, regarding the cognovit notes, Anthony Novak prepared documents for the Olszonickis relating to the funds invested in the German company and taxes paid (Deposition P. Olszonicki at 43, 44) and told Mr. Olszonicki that the interest payments he received were "net of German taxes." (Depo. of Paul Olszonicki at 46).

Q And did he tell you why you received less than you would ordinarily be entitled to based upon an eight percent return?

A He said the taxes and the expense of sending the money here were deducted.

Q And did he tell you anything about what American taxes had to be paid on the eight percent interest payments?

A He said, by paying that German tax, there'd be no tax trouble here.

(Depo. of Paul Olszonicki at 40).

Q All right. Were you told by Mr. Novak that the interest—that the interest payments you received were net of German taxes?

A Yes.

Q Let's exclude for a moment your—whatever money you made as a result

of interest payment on this loan to Intermercat or to whoever you loaned it to. Excluding that money, during the years 1980 to 1987, were you required to file a federal income tax return?

A   According to Tony, it was taken care of.

(Depo. of Paul Olszonicki at 46).

In an attempt to gain evidence to support its attack on the credibility of Mr. Olszonicki, Defendant made a request pursuant to Rule 56(e) that this Court deny Plaintiffs' Motion for Summary Judgment, or, in the alternative, provide Defendant with additional time to come forward with the affidavit of Kasimir Mavko setting forth evidence relating to the transaction in Germany. To date, no affidavit has been filed in this Court despite assurances made by Defendant. (Memorandum in Opposition to Motion for Summary Judgment at 5).

Defendant, in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, implies, without a factual basis, that Plaintiff, acting in concert with Anthony Novak, attempted to defraud the United States out of income taxes which were properly due to the United States Government. (Memo. in Opposition to Plaintiff's Motion for Summary Judgment at 9) However, Defendant offers no evidence to support this contention.

Defendant also argues that *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir.1990) is inapplicable. In *Heasley*, the court, focusing on the inexperience, limited knowledge about investing, and the level of education of the plaintiffs, held that the plaintiffs had established reasonable cause to rely on the advice of their accountant. *Id.* at 385. The Olszonickis come from similar backgrounds. They both received limited education and were advanced in age.[2] In addition, Mr. Olszonicki is in poor health and suffers from impairments of his hearing and sight. In light of *Heasley*, it was reasonable for Plaintiffs to rely on the

advice of their accountant based on their age, education and health.

In 1979, after they sold the bar, the Olszonickis went to the IRS and were told they did not have to file an income tax return (Depo. of Paul Olszonicki at 46).

Q   Now, what about—assuming—let's leave that aside. Did you have any other income which would have required you to file, you and your wife to file a federal income tax return?

A   Just Social Security.

Q   And did you inquire about whether you had to file an income tax return?

A   That's when she went to see her niece.

Q   Did you ever actually go to the IRS and ask them whether you had to file an income tax return?

A   We went there in '79 after we sold the bar and the building, and they told us we don't have to file tax ...

(Deposition of Paul Olszonicki at 46–47). Defendant implies that since Plaintiffs contacted the Internal Revenue Service in 1979 regarding the sale of the building that they should have also contacted agents of the Internal Revenue Service between 1980 and 1986 regarding the interest payments made on the cognovit notes. (Tr. Hearing on Motion for Summary Judgment 12/16/1993 at 7–8). This type of corroboration is not required. "To require the taxpayer to challenge the attorney, to seek a 'second opinion,' or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." *United States v. Boyle*, 469 U.S. 241, 251, 105 S.Ct. 687, 692–93, 83 L.Ed.2d 622 (1984) (citing *Haywood Lumber & Mining Co. v. Commissioner*, 178 F.2d 769, 771 (CA2 1950).

Defendant has failed to bring forward factual evidence to support its attack on the credibility of Plaintiff Mr. Olszonicki. It's objection is therefore overruled, and Plaintiffs' Motion for Summary Judgment is

---

**2.** Although Defendant argues that Plaintiffs made sophisticated investments in silver, the record reflects that Paul Olszonicki made the investments in silver on the advice he received while in the hospital. Additionally, if the Olszonicki's

were sophisticated investors it appears unlikely they would have waited until their investment in silver fell from a high value of $5 million to $1.4 million before selling it. (Deposition of Paul Olszonicki at 24).

granted. Accordingly, judgment shall be entered refunding the penalties paid by Plaintiffs for the years 1980 through 1987 totalling $198,670.68 plus interest, attorney fees and costs.

IT IS SO ORDERED.